ACCEPTED
13-15-00151-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/8/2015 4:46:08 PM
Dorian E. Ramirez
CLERK

# No. 13-15-00151-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/8/2015 4:46:08 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS FOR THE
THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI-EDINBURG

**JSC NIZHNEDNEPROVSKY TUBE ROLLING PLANT a/k/a
NIZHNEDNEPROVSKY TRUBNY ZAVOD a/k/a INTERPIPE NTRP a/k/a NTRP,
et al.,**

**Appellants**

**v.**

**United Resources, L.P.,**

**Appellee**

From the 49th District Court of Zapata County, Texas
*{The Hon. Joe Lopez Presiding}*

## BRIEF OF APPELLANTS

THE LAW OFFICE OF
AUDREY MULLERT VICKNAIR

Audrey Mullert Vicknair
State Bar No. 14650500
802 N. Carancahua, Ste. 1350
Corpus Christi, Texas 78401-0022
 (361) 888-8413; fax (361) 887-6207
avicknair@vicknairlaw.com

HIGHTOWER | CAPELLAN

Timothy R. Hightower
State Bar No. 00795421
thightower@hrclegal.com
Alexandra Mutchler
State Bar No. 24051102
amutchler@hrclegal.com
1909 Arbor Street
Houston, Texas 77004
(832) 433-7279; fax (832) 431-4288

*Attorneys for Appellants*

**ORAL ARGUMENT REQUESTED**

i

## IDENTITIES OF PARTIES AND COUNSEL

APPELLANTS

**JSC NIZHNEDNEPROVSKY TUBE ROLLING PLANT a/k/a NIZHNEDNEPROVSKY TRUBNY Zavod a/k/a INTERPIPE NTRP a/k/a NTRP;**

**SEPCO TUBULARS, INC. n/k/a NORTH AMERICAN INTERPIPE, INC.;**

**SEPCO SA n/k/a INTERPIPE EUROPE SA;**

**PADRE TUBULAR, INC.**

COUNSEL FOR APPELLANTS

Audrey Mullert Vicknair
State Bar No. 14650500
avicknair@vicknairlaw.com
LAW OFFICE OF AUDREY MULLERT VICKNAIR
802 N. Carancahua, Ste. 1350
Corpus Christi, Texas 78401-0022
(361) 888-8413; fax (361) 887-6207

Timothy R. Hightower
State Bar No. 00795421
thightower@hrclegal.com
Alexandra Mutchler
State Bar No. 24051102
amutchler@hrclegal.com
HIGHTOWER | CAPELLAN
1909 Arbor Street
Houston, Texas 77004
(832) 433-7279; fax (832) 431-4288

APPELLEE

**UNITED RESOURCES, L.P.**

**COUNSEL FOR APPELLEE**

Michael McElroy
MCELROY, SULLIVAN, MILLER, WEBER &
OLMSTEAD LLP
1201 Spyglass, Ste. 200
Austin, Texas 78746
(512) 327-8111; (512) 327-6566 (fax)
mmcelroy@msmtx.com

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS.................................................................................... iv

INDEX OF AUTHORITIES............................................................................... vii

STATEMENT OF THE CASE..............................................................................x

STATEMENT REGARDING ORAL ARGUMENT ........................................... xii

ISSUES PRESENTED........................................................................................ .xiii

   **I.**    The Judgment awards an impermissible multiple recovery for a single injury; the One Satisfaction Rule has been violated and UR is entitled to only one recovery.

   **II.**    UR cannot recover for breach of contract: the contract between Padre and UR precludes recovery.

   **III.**    UR cannot recover for fraud: UR failed to submit a proportionate responsibility question to the jury, instead relying on conspiracy to create joint and several liability. The jury found no conspiracy. There is also no duty disclose and no evidence defendants had knowledge of any alleged defect.

   **IV.**    UR cannot recover for breach of warranty of fitness for particular purpose: UR did not buy this casing for other than the usual purpose, that is, to run in an oil and gas well. Particular purpose requires an unusual use, which was not shown here. Further, UR did not rely on the Defendants' skill and judgment before purchasing the casing.

   **V.**    UR cannot recover for products liability: there is no evidence to impute liability to the downstream sellers (Sepco and Sepco Tubulars) and the product was not unreasonably dangerous (NTRP, Sepco and Sepco Tubulars). The fourth appellant, Padre, was not found liable under a products liability theory.

   **VI.**    If UR can recover, actual damages must be modified, no attorneys' fees or exemplary damages are recoverable, pre-judgment interest can only be assessed once (not multiple times as in the current judgment), and interest must be re-calculated to account for reduced damages and/or an 18-month

delay in filing suit against certain defendants, and to correct calculation errors in the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................1

I. Trial Testimony ..................................................................................1

II. Procedural History.............................................................................7

SUMMARY OF THE ARGUMENT ........................................................9

ARGUMENT ...........................................................................................12

I. UR Obtained Multiple Recovery for the Same Injury; the One Satisfaction Rule has Been Violated ...............................................12

   A. The Law Regarding the One Satisfaction Rule ........................12

   B. This Judgment Awards Double Recovery for a Single Injury ................16

   C. The Record Establishes UR Tried this Case Asserting a Single Injury ...................................................................................18

     1. The Pleadings.................................................................18

     2. Trial Argument by UR....................................................19

     3. Charge Conference.........................................................20

     4. The Jury Charge.............................................................21

     5. Closing Arguments ........................................................23

   D. The Judgment Morphs Together Various Findings to Create Erroneous Awards ....................................................................24

   E. Conclusion: This Court Cannot Sustain this Multiple Recovery..........25

II. UR Cannot Recover More than $200,000 in Actual Damages Based Upon the Testimony of Its Own Corporate Representative .........................26

III. UR Cannot Recover for Breach of Contract....................................27

IV. UR Cannot Recover for Fraud........................................................ 30

     A.     UR Did Not Submit a Proportionate Responsibility Question for Fraud, Instead Relying on a Conspiracy Theory the Jury Refused to Find ..............30

     B.  No Duty to Disclose .........................................................................35

     C.  No Evidence of Knowledge of Any Alleged Defect ............................37

V.     UR Cannot Recover for Breach of Warranty of Fitness for a Particular Purpose .................................................................................39

     A.     This Casing was Not Purchased for an Unusual Purpose; the Particular Purpose Warranty Does Not Apply ................................................40

     B.     UR Did Not Rely on Appellants' Skill and Judgment Before Purchasing the Casing.......................................................................42

VI.   UR Cannot Recover for Products Liability .......................................43

     A.     The Sellers Made No Express Representations and Had No Knowledge of an Alleged Defect at the Time They Supplied the Casing .................................................................................................44

     B.     There is No Evidence the Casing was Dangerous to an Extent Beyond What an Oil and Gas Operator Would Contemplate ........................46

VII.  Pre-Judgment Interest Must be Modified if Any Judgment Can be Entered .................................................................................................48

CONCLUSION .........................................................................................................50

PRAYER...................................................................................................................52

CERTIFICATE OF COMPLIANCE......................................................................53

CERTIFICATE OF SERVICE ...............................................................................53

APPENDIX ..............................................................................................................54

A   -     Judgment (CR 841-847)

B   -     Jury Verdict (CR 741-767)

# INDEX OF AUTHORITIES

## CASES

*American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243
(Tex.App.--Houston [1ˢᵗ Dist.] 1988, writ denied) .............................................15

*ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118
(Tex.App.—El Paso 1996, no writ)...................................................................41

*Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785 (Tex. 1988).............15

*Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922 (Tex. 1979).........................33

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) ......................................................29

*Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353
(Tex.App.—Corpus Christi 1994, no writ)..........................................................41

*Crown Life Ins. v. Casteel*, 22 S.W.3d 378 (Tex. 2000)........................................13

*Doubleday & Co. v. Rogers*, 674 S.W.2d 751 (Tex. 1984)....................................33

*Drury Southwest, Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287
(Tex.App.—San Antonio 2011, pet. denied)............................................... 13, 15

*Farias v. Laredo Nat'l Bank*, 985 S.W.2d 465
(Tex.App.—San Antonio 1997, pet. denied) .....................................................31

*First Nat'l Bank v. Fojtik*, 775 S.W.2d 632 (Tex. 1989)................................ 28, 35

*FPL Energy, LLC v. TXU Portfolio Mngmt. Co., LP*, 426 S.W.3d 59
(Tex. 2014)...................................................................................................29

*Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310
(Tex. 2005) (per curiam) ................................................................................29

*Gallas v. Car Biz., Inc.*, 914 S.W.2d 592
(Tex.App.—Dallas 1995, writ denied) ........................................................ 26, 27

*Galle, Inc. v. Pool*, 262 S.W.3d 564
(Tex.App.—Austin 2008, pet. denied) ........................................................ 13, 14

*Henderson v. Ford Motor Co.*, 547 S.W.2d 663
(Tex.App.—Amarillo 1977, no writ)........................................25

*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)............ 36, 37

*JCW Elecs., Inc. v. Garza*, 176 S.W.3d 618
(Tex.App.—Corpus Christi-Edinburg 2005), *rev'd on other grounds*,
257 S.W.3d 701 (Tex. 2008) ........................................41

*John Masek Corp. v. Davis*, 848 S.W.2d 170
(Tex. App.—Houston [1st Dist.] 1992, writ denied)..........................31

*Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998)..........49

*Ojeda de Toca v. Wise*, 748 S.W.2d 449 (Tex. 1988) ...............................15

*Safeshred, Inc. v. Martinez,* 365 S.W.3d 655 (Tex. 2012) ........................33

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997)...................37

*Schlumberger Well Surv. Corp. v. Nortex Oil & Gas Corp.*,
435 S.W.2d 854 (Tex. 1968) .......................................34

*Siller v.  LLP Mortgage Ltd.*, 2013 Tex. App. LEXIS 4520
(Tex.App.—San Antonio 2013, pet. denied)..............................27

*Sipes v. General Motors Corp.*, 946 S.W.3d 143
(Tex.App.—Texarkana 1997, writ denied)...............................41

*Stewart Title v. Sterling*, 822 S.W.2d 1 (Tex. 1991) ........................ 13, 14

*Tiller v. McLure*, 121 S.W.3d 709 (Tex. 2003) .........................................27

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996) .....................................34

*Weeks Marine, Inc. v. Salinas*, 225 S.W.3d 311
(Tex. App.—San Antonio 2007, pet. dism'd).................................15

*Waite Hill Servs. v. World Class Metal Works, Inc.*, 959 S.W.2d 182
(Tex. 1998)................................................................. 12, 13, 14

*Zorilla v. Aypco Constr. II, LLC*, 421 S.W.3d 54
(Tex.App.—Corpus Christi-Edinburg 2013), *aff'd in part (on pertinent
grounds) and rev'd in part (on other grounds),*

2015 Tex. LEXIS 555 (Tex. 2015) 508 ........................................... 12, 13, 25, 26

**STATUTES AND RULES**

TEX. BUS. & COM. CODE § 2.314(b)(3)..............................................................40

TEX. BUS. & COM. CODE § 2.315 .....................................................................40

TEX. CIV. PRAC. & REM. CODE § 33.003(a) (Vernon 2003) ....................................32

TEX. CIV. PRAC. & REM. CODE § 33.013(a) (Vernon 2003) ...................................32

TEX. CIV. PRAC. & REM. CODE § 33.013(b)(1) (Vernon 2003) .............................24

TEX. CIV. PRAC. & REM. CODE 38.001................................................................25

TEX. CIV. PRAC. & REM. CODE § 41.004(a) ........................................................33

TEX. CIV. PRAC. & REM. CODE § 82.003(a)(1)-(7) ...............................................44

TEX. CIV. PRAC. & REM. CODE § 82.003(a)(5). .............................................. 44, 45

TEX. CIV. PRAC. & REM. CODE §82.003(a)(6) ................................................ 44, 46

TEX. FIN. CODE § 304.103 ...............................................................................49

TEX. FIN. CODE § 304.104 ........................................................................... 48, 49

TEX. R. APP. P. 39.1. ...................................................................................... xii

**SECONDARY AUTHORITIES**

TEXAS PATTERN JURY CHARGES – BUSINESS PJC 109.1 (2014)...............34

TEXAS PATTERN JURY CHARGES – BUSINESS PJC 102.10 (2014)............40

TEXAS PATTERN JURY CHARGES – BUSINESS PJC 102.11 (2014)............40

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS:**

Come now Appellants NTRP, Sepco Tubulars, Inc., Sepco SA and Padre Tubulars, Inc. and file their opening Brief in support of their position that the trial court's judgment in favor of United Resources ("UR") is fundamentally in error and must be reversed. Appellants would show:

## STATEMENT OF THE CASE

On December 19, 2005, UR filed suit against Sepco Tubulars, Inc. and Padre Tubulars, Inc. in Cause No. 6,112 in the 49th Judicial District Court of Zapata County, the Hon. Jose Lopez presiding (CR 10-14). UR alleged products liability and negligence which allegedly caused the loss of UR's Garcia No. 1 oil and gas Well (*id*.). 18 months later, on May 7, 2007, UR filed a First Amended Petition adding NTRP, Sepco SA, and others asserting various causes of action (CR 17-30). On August 3, 2011, UR filed a Fourth Amended Petition, asserting the following causes of action: products liability, negligence, breach of express warranties, breach of the implied warranties of merchantability and of fitness for a particular purpose, negligent misrepresentation, breach of contract, fraud, fraud by non-disclosure, and negligent performance of a contract (CR 79-91). UR then supplemented its petition three times, the first time to confirm several defendants were nonsuited and to add facts; the second to non-suit negligent performance of contract and veil piercing, and the third to add yet more facts (CR 201, 243, 245).

The case was tried to a jury beginning September 15, 2015 (RR vo. 15, *passim*). Through the course of the proceedings UR nonsuited its claims for negligence, negligent misrepresentation, and breach of express warranty (CR 738). UR submitted only breach of contract, fraud by non-disclosure, breach of warranty of fitness for a particular purpose, and products liability to the jury (CR 741-766). The jury found various Appellants liable under various theories of recovery, but did not find all Appellants liable under all theories (*id*.). UR sought over $2.8 Million in damages for the loss of the Garcia No. 1 Well; the jury found $1.3 Million (*id*.). UR sought nearly $700,000 in attorneys fees on the contract claim; the jury found $350,000 (*id*.). UR sought millions in exemplary damages on the fraud claim; the jury found a total of $350,000 (*id*.).

UR filed a Motion for Judgment on the Verdict and submitted a Judgment adopting all of the jury's findings on liability and damages (CR 791-801). However, UR sought double recovery for the same injury under multiple theories of liability, with a total judgment of **over $4 Million**: $2.6 in actual damages for breach of contract and fraud, **plus** attorneys fees for contract **and** exemplary damages for fraud, **plus** double pre-judgment interest (*id.*).

Appellants filed a Motion to Disregard Certain Jury Findings (since many defendants obtained favorable findings) (CR 802-822) and a Response and Objection to UR's Motion to Enter Judgment and prayed the trial court to order UR

to choose its theory of recovery under the One Satisfaction Rule such that it could recover only once for its single injury (CR 823-835).

The trial court refused and entered the $4 Million + Judgment UR requested (CR 841-847). Appellants filed a Motion to Vacate, Modify, Correct or Reform Judgment, or in the Alternative Motion for Partial New Trial (CR 848-876). That motion was overruled by operation of law. NTRP, Sepco, Sepco SA and Padre filed their Notice of Appeal (CR 880).

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument in this cause to discuss the record, legal arguments, and dispositive issues. Appellants believe the decisional process would be significantly aided by oral argument. TEX. R. APP. P. 39.1.

# ISSUES PRESENTED

**I.**     The Judgment awards an impermissible multiple recovery for a single injury; the One Satisfaction Rule has been violated and UR is entitled to only one recovery.

**II.**    UR cannot recover for breach of contract: the contract between Padre and UR precludes recovery.

**III.**   UR cannot recover for fraud: UR failed to submit a proportionate responsibility question to the jury, instead relying on conspiracy to create joint and several liability. The jury found no conspiracy. There is also no duty disclose and no evidence defendants had knowledge of any alleged defect.

**IV.**    UR cannot recover for breach of warranty of fitness for particular purpose: UR did not buy this casing for other than the usual purpose, that is, to run in an oil and gas well. Particular purpose requires an unusual use, which was not shown here. Further, UR did not rely on the Defendants' skill and judgment before purchasing the casing.

**V.**     UR cannot recover for products liability: there is no evidence to impute liability to the downstream sellers (Sepco and Sepco Tubulars) and the product was not unreasonably dangerous (NTRP, Sepco and Sepco Tubulars). The fourth appellant, Padre, was not found liable under a products liability theory.

**VI.**    If UR can recover, actual damages must be modified, no attorneys' fees or exemplary damages are recoverable, pre-judgment interest can only be assessed once (not multiple times as in the current judgment), and interest must be re-calculated to account for reduced damages and/or an 18-month delay in filing suit against certain defendants, and to correct calculation errors in the judgment.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.      Trial Testimony**

Rick Allen was Vice President of Operations for UR from 2001 to 2012 (RR 16:137-38).  He designed UR's Garcia No. 1 Well, which is at issue in this case, and put it into production (RR16: 138, 146).  UR was the operator of the well (RR18:24-25).  UR chose P-110 pipe for the operation (RR16:156-59).  P-110 is a pipe strength, grade and weight designated by the American Petroleum Institute ("API") and is obtained from API-represented vendors (RR16:156-58).

NTRP manufactures pipe used to drill oil and gas wells, also known as casing, and sells it through Sepco SA to Sepco Tubulars, which in turn has a relationship with Padre (RR16:162, 260; RR25:178, 179, 193).  NTRP has been API+-certified since 1990 (RR25:72).  Sepco Tubulars is a pipe supplier for Padre (RR16:164, 228).  UR purchased about 12,000 feet of 4 ½" P-110, 13 ½-pound psi casing from Padre (RR16: 164, 228-29, 231, 238-39, 241-42; PX-8, 9, 11, 13).

Once the well was drilled the 4 ½" casing was installed and a pressure test was run; the casing split or burst at 380 feet (RR16:167, 173-175, 176; PX- 2-A, 2-B [photos]).  This occurred May 3, 2005 (RR16:176-77, 258).  UR "got lucky" and was able to "back it off enough to boot it right below" (RR16:175).  The joints of casing at issue were pulled out and replaced, then the new casing was tested with success and the well completion continued (RR27:29).

1

Allen requested the MTRs (the Mill Test Reports showing the metallurgical information for the casing) from Padre, which he received the next day (RR16:177, 205-206; PX-15). The MTRs came from the NTRP Mill and confirmed that the pipe UR ordered from Padre was what it received (RR16:206-07, 260, 262-63). The MTRs confirm the pipe is API-certified, and a third party certification inspection company in France, EFM, certified the pipe as well (RR18:111-112). Regardless, the MTR's were not part of the sales transaction, or relied upon by UR in making the decision to purchase the casing (RR 18:134-135). The only representations made regarding the product and on which UR relied came during the sales process with Padre. UR never talked with anyone in the distribution chain other than Padre before purchasing the casing (RR 18:134-35).

UR took ten joints out above the split and replaced two of them (RR16:208-09). They re-ran the other 8 joints in the hole (RR18:84-85). They began producing again (RR18:84). They reached their target and the well began producing; Brad Watson, president of UR from 2000-2011 (RR27:19), testified, "we were very pleased" (RR27:30). The two joints pulled from the well were sent for testing (RR18:85). UR sent the MTR's to a metallurgist (RR16:267).

Production began to drop off – it was a rapid decline and UR discovered an issue at 8,816 feet (RR16:177; RR18:91; RR19:24) on May 15 or 16, 2005 (RR16:268; RR18:91). UR believed the casing collapsed and/or split at 8,816 feet

(RR16:268-271, 279-280, 289-90; RR17:59-64; RR27:30-32, 36). An outside company, the Wood Group, opined the pipe collapsed (RR16:279-83; RR17:62-63).

However, Rick Allen admitted that the diminished flow rate may or may not have had anything to do with the collapse, "it's anyone's guess" (RR18:94-95, 96). The Roleta field, where the Garcia well was being drilled, was known for coming in early and then having a rapid decline in the production (RR18:80, 91-92). This was the first time UR had ever drilled in the Roleta field; UR drilled eight wells and one of them, the Sergio Jr., was a dry hole (RR18:98-99; RR28:35). Two out of seven or eight of UR's wells did not play out (RR18:99). Allen testified that on average, out of every ten wells drilled, three will be dry holes, three will pay out (break even) and four are the big wells that make all the money (RR18:99-101).

Over the next six months, until early 2006, UR ran other tubing and was able to produce: "it did flow for several months" but then gradually declined over time (RR27:37, 38). Yet UR filed suit on December 19, 2005 (RR18:210).

In early 2006 UR determined to shut the original well bore down (RR27:39). UR closed off the old portion of the well on August 30, 2006 (RR17:96-98; PX-20). UR had also determined to side-track the well: abandon the old line at the break and run new casing around it to get back to the target (RR16:290-92; RR27:37). "The advantage is, you still get to use your surface and your intermediate stream. You still got that pipe in. All we're doing is getting away from this bad pipe down here

3

and getting off back to this same target." (RR16:292-93) They drilled instead to the shallower Perdido level and produced from there (RR27:154, 155). "It made a good Perdido well." (RR27:154; RR19:24 [Allen: they hit a commercially viable area with consistent flow with the sidetrack])

The Defendants' expert Gary Wooley testified there was no evidence to support a casing collapse; there was an obstruction but he could not tell what kind (RR28:36). He had not seen any of the test results done by UR and the Wood Group and stated that generally readings from those type of tests are very subjective (RR28:37, 38). He also testified the mud weight was not what was proposed (RR28:38), and that the dogleg severity was too high which may have caused the failure (RR28:39-41). There were twists and turns in the well and these doglegs could cause additional compression on the pipe (RR28:41-44). There were also gas pockets coming in and UR was losing mud (RR28:45). He noted that the geologists abandoned the well plan and just tried to stick it (RR28:46).

Wooley also found that the cementing was not done properly, thereby causing lack of structural support (RR28:48-49). He said the pipe was deformed in the area where there is no cement (RR28:49-50). The casing was therefore exposed to excessive loads; the pressure on the inside must not be less than the pressure on the outside (RR28:50-51). Any one of these issues could have caused the casing issue at 8,816 feet (RR28:51, 68). All of these are operator UR's errors, they are not

problems caused by (alleged) manufacturing deficiencies.

In addition Wooley testified he would expect very little production from the area in which UR drilled [Roleta field] and a well would not be commercial there (RR28:61-62, 64). Wooley noted no second well was drilled into that formation by UR (RR28:62, 64). As stated, UR's initial well to the deeper formation was not viable and UR did not experience a return. Instead it drilled to the shallower Perdido formation when it sidetracked.

Wooley's opinion was there was no defect at 8,816 feet (RR28:67). There is no evidence of a defect because no material was brought to the surface or otherwise examined (RR28:67). The casing is cemented in so taking it out would be very hard to do [and it was not done] (RR28:67-68).

There was also a great dispute about whether NTRP manufactured the casing that failed at 8,816 feet (RR25:176). There was significant evidence that UR ran a mixed string in the hole (RR18:167-68 [Pipe at 380-foot well issue was tested; one joint matched the MTR and one did not]; RR20:40-41[UR expert testified it's a mixed string]; RR28:19, 20-21, 32-33 [defense expert testified it was a mixed string]). Because the actual piece of pipe could not be extracted, there was no direct evidence that it was NTRP pipe that failed (RR28:67-68).

Tor Vatne, President of Sepco Tubulars at the relevant time, testified that no one in the chain but NTRP makes an independent representation that the pipe is API-

110 (RR25:235). He categorically denied any knowing misrepresentations, fraud, or conspiracy (RR25:236-239, 240-41, 243). He testified NTRP supplied the product in good faith and followed all normal procedures (RR25:241).

Rick Allen confirmed he spoke with no one at NTRP, Sepco, or Sepco SA before buying the casing, and no representations were made to him by any of those companies before he bought the pipe (RR18:134-135, 137). Representations were made exclusively by Padre (RR18:135, 137).

UR's Brad Watson told the jury that $2.876 million was spent on the Garcia No. 1 Well as of February 2006, $179,000 of it to test the casing and store it after the upper failure (RR27:39, 165; PX-53). Watson testified, "$2.697 Million is what we're claiming as damages" plus $179,000 for testing and storage (RR27:165; PX-53). Although there were two failures, it added up to one damage because the casing provided by the defendants failed at both levels (RR27:71, 168-69). Watson testified he originally gave Sepco, as part of the damages, the cost to sidetrack which was $3.5 million (RR27:166-67). But UR decided it is "going with the original numbers" and "keeping it simple" with three numbers: cost to drill, cost to test, cost to store. Total: $2.876 Million (RR27:167).

Allen and Watson testified that the eight wells - including this Garcia No. 1 well – were sold in 2008 for a net profit of approximately $32 Million (DX-45; RR27:142-43, 144; RR18:24 [Allen]). The corporate representatives testified UR

6

may have made $200,000, or it lost $200,000, or it broke even on this Garcia No. 1 Well (RR27:146, 151-152, 164; RR18:24 [Allen]).

## II. Procedural History

After multiple amendments and supplements to its Petition (CR 10, 17, 31, 58, 79, 201, 243, 245), and multiple nonsuits (CR 120, 198, 243, 738), UR submitted this case on four theories of liability: breach of contract, fraud, breach of warranty of fitness for a particular purpose, and products liability (CR 741-764). UR submitted, under various theories, all or some of six defendants: NTRP, Sepco, Sepco SA, Padre, Allied and Interpipe (*id.*). The jury properly found that only Padre had a contract with UR, Sepco did not (CR 745). The jury properly found that Padre did not commit fraud and was not liable on a products liability theory (CR 748, 759). The jury properly found the defendants did not conspire to commit fraud (CR 749). The jury properly found Allied and Interpipe were not liable to UR under any theory (CR 748, 750) so they are not parties here.

The jury did find that Padre was liable for breach of contract; NTRP, Sepco and Sepco SA were liable for fraud and products liability; and NTRP, Sepco, Sepco SA and Padre were liable for breach of warranty of fitness for a particular purpose (CR 745-760). UR did not submit an apportionment of liability question on its fraud claim, instead submitting a conspiracy question to impose joint and several liability (CR 748-49, 752). The jury found no conspiracy (CR 749). UR submitted

apportionment questions for breach of warranty and products liability (CR 752, 759). On the breach of warranty claim, the jury found NTRP 50% responsible, Sepco 20%, Sepco SA 20%, and Padre 10% (CR 752). On the products claim the jury found NTRP 60% responsible, Sepco 20%, and Sepco SA 20% (CR 759).

UR submitted the identical damage measure for all four causes of action (fraud and breach of warranty were combined in one damage question) and the jury found the identical amount of damages under each theory: $1.3 Million (CR 747, 753, 760).

UR filed an unconditional "Motion for Judgment on the Verdict," and submitted a proposed judgment adopting all of the jury's findings (CR 791-799). UR, therefore, accepted the jury's damages and attorneys' fee awards.

However, in its proposed judgment UR sought double recovery for the same injury, seeking a $4 Million judgment for damages on multiple causes of action combined (CR 791-799): actual damages, attorney's fees and prejudgment interest for breach of contract, *plus* actual damages, prejudgment interest and exemplary damages for fraud/"tort" (CR 793-799 [UR proposed judgment], CR 841-47 [Final Judgment]). The judgment includes an "alternative" recovery "should the jury's findings of fraud and misrepresentation be overturned on appeal" that awards recovery for breach of contract *plus* breach of warranty (CR 797, 845).

Appellants filed a Motion for JNOV seeking relief from the jury's findings that were against them (CR 802) and a Response in Opposition and Objections to

8

UR's Motion to Enter Judgment on the Verdict, citing the One Satisfaction Rule and arguing that UR's request amounted to multiple recovery for the same injury, which is prohibited (CR 823-835). Appellants demanded that the trial court force UR to choose a theory on which to recover (*id*.). The trial court refused and entered the judgment UR proposed (CR 841-47).

NTRP et al then filed a Motion to Vacate, Modify, Correct or Reform Judgment, seeking multiple alternative remedies (CR 848-76). The motion was overruled by operation of law.

### SUMMARY OF THE ARGUMENT

The trial court's judgment is so convoluted and fraught with error that it must be reversed. The judgment wrongly awards multiple recoveries to UR for the same single alleged harm, that is, the loss of UR's Garcia No. 1 Well because the casing provided by Defendants was allegedly defective. The judgment awards $1.3 Million in actual damages and $350,000 in attorneys' fees for breach of contract *plus* $1.3 Million in actual damages and $350,000 in exemplary damages for fraud *plus* double if not triple prejudgment interest (totaling over $1.17 Million). The judgment applies percentage of responsibility findings on the products claim to the fraud claim where no such findings were made. The judgment also combines multiple jury findings on various causes of action – fraud, warranty and products -- to award a conglomerate recovery for "tort," and a similar "alternate recovery for tort." The list of errors in

9

this judgment goes on and on.

The case was pleaded, tried, argued, and submitted by UR with a single injury and damage model. A review of the last live petition and the trial transcript -- including the motions in limine, witness testimony, mid-trial evidentiary arguments, charge conference, and closing arguments – as well as the Charge itself establish UR tried and submitted this case as having suffered only one injury. UR's injury and damage model was the same under every theory of liability: the defective casing caused the loss of its well in the amount of $2.87 Million. UR gave the jury that same number for every cause of action. The jury answered with the same number under every theory of liability submitted: $1.3 Million.

UR is only entitled to one recovery for its single injury. The One Satisfaction Rule applies.

That said, if UR can recover damages, then according to the testimony of UR's own President, they are limited. UR's President testified the Garcia No. 1 Well was sold, after the alleged casing failure, along with seven other wells for a profit of $32 Million. Specifically with respect to the Garcia No. 1 Well, UR's President testified the company lost $200,000, broke even, or made $200,000. Under this testimony, at best, actual damages cannot exceed $200,000.

However UR cannot recover for breach of contract: under the terms of its contract with Padre, UR cannot recover for the loss of the hole, which is the relief it is

seeking. Padre was only responsible if it was negligent or committed willful misconduct. UR non-suited its negligence claim and the jury found Padre did not commit fraud (willful misconduct). UR cannot recover for breach of contract (actual damages and attorneys' fees).

Nor can UR recover for fraud, because UR failed to obtain necessary apportionment of responsibility findings from the jury in order to assess liability against any defendant. UR submitted a conspiracy claim to assert joint and several liability, but the jury found no conspiracy. UR submitted no back-up percentage of responsibility question. UR proposed, and the trial court accepted, a judgment using the jury's *products liability* percentage findings to assess liability for fraud. Nothing in the products apportionment question hooked those findings to the fraud claim. UR is lacking a fundamental requisite for assessing liability against any defendant for fraud (and thus exemplary damages). In addition UR cannot recover for fraud on the merits. Appellants had no duty to disclose, and there is no evidence they had knowledge of any alleged defect in the casing.

UR cannot recover for breach of warranty of fitness for a particular purpose because UR did not purchase the casing for a use other than ordinary and customary in the industry. The casing was not purchased for a special, unusual purpose as required for a particular purpose claim. Ordinary use implicates the warranty of merchantability, which UR plead but did not submit. Further, UR did not rely on

11

any Appellants' skill and judgment. And the prejudgment interest awarded in the judgment is calculated in error.

With respect to products liability, Sepco and Sepco SA are innocent down-stream sellers. There is no evidence of an express representation by either, or of knowledge of any alleged defect in the casing before it was shipped, both of which would be required to impute liability to them. In addition the product was not unreasonably dangerous. No judgment can be entered for products liability. If the Court disagrees, attorneys' fees are not recoverable for products liability and UR did not hook its exemplary damage claim to its product claim (only to its fraud claim) so no punitive damages are recoverable. Finally, pre-judgment interest can only be recovered once.

The trial court's judgment must be reversed.

## **ARGUMENT**

I.    **UR Obtained Multiple Recovery for the Same Injury; the One Satisfaction Rule has Been Violated**

### **A. The Law Regarding the One Satisfaction Rule**

The law is clear: a party is not entitled to a double recovery, that is, when "a plaintiff obtains more than one recovery for the same injury." *Waite Hill Servs. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998); accord, *Zorilla v. Aypco Constr. II, LLC*, 421 S.W.3d 54, 66 (Tex.App.—Corpus Christi-Edinburg 2013), *aff'd in part (on pertinent grounds) and rev'd in part (on other grounds)*, 2015 Tex. LEXIS 555 (Tex. 2015) (in residential construction case, jury found fraud

and breach of contract; judgment awarded attorneys' fees and exemplary damages; this Court held attorneys' fees not available for fraud so that was an impermissible double recovery); *Drury Southwest, Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 293 (Tex.App.—San Antonio 2011, pet. denied) (holding the law "prevent[s] double recovery for a single wrong.")

As this Court correctly recognized in *Zorilla*,

> When a defendant commits the same, or even differing, acts resulting in a single injury, a plaintiff is permitted to allege alternative theories of recovery. *See [Waite Hill, supra]*; *see also Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). However, under these circumstances, the plaintiff may not recover damages on both theories. [*Waite Hill*] (citing *Stewart Title v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). This would amount to a "double recovery" for a single injury, which is clearly prohibited under the law. *See id*.

*Zorilla*, 421 S.W.3d at 66.

*Waite Hill* is on point. *Id*., 959 S.W.2d at 184. Plaintiff World Class submitted multiple causes of action against Colony, including claims under an insurance policy, and tort claims. World Class submitted the same damage question for both, and the jury found the same damage number for both: $55,000. The trial court entered judgment for World Class in the amount of $110,000, for both claims. Colony objected that this was a double recovery and prayed the trial court to order that World Class to choose a theory. The trial court refused. The Supreme Court noted the damages were conclusively for the same loss, as here, and reversed: World Class could only recover under one theory of liability. *Id.*; accord, *Galle, Inc. v.*

13

*Pool*, 262 S.W.3d 564, 573 (Tex.App.—Austin 2008, pet. denied) (holding, "Thus, if the plaintiff has suffered only one injury, even if based on overlapping and varied theories of liability," the plaintiff may only recover once; [t]his is especially true if the evidence supporting each cause of action is the same.")

In addition, "There can be but one recovery for one injury, and the fact that ***more than one defendant*** may have caused the injury or that there may be more than one theory of liability, does not modify this rule." *Stewart Title*, 822 S.W.2d at 7 (emphasis added). "Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when the defendants commit technically differing acts which result in a single injury." *Waite Hill*, 959 S.W.2d at 184. The Texas Supreme Court makes clear, "There is no reason we should allow a windfall double recovery in cases involving multiple defendants when double recovery is clearly prohibited against a single defendant." *Stewart Title*, 882 S.W.2d at 6.

When the plaintiff alleges multiple causes of action against multiple defendants – including breach of contract, fraud, and misrepresentation (as here), and even when certain causes of action can only be plead against certain of the defendants – and the plaintiff suffers but one injury, the one satisfaction rule applies. *See*, *Stewart Title*, 822 S.W.2d at 7 (multiple claims alleged against multiple defendants; although Insurance Code claim could only be brought against Stewart Title, injury to plaintiff was the same – loss of a property – and one satisfaction rule

14

applied); *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex. 1988) (multiple claims against multiple defendants; some claims only available against some defendants; but all claims based on fraud and misrepresentation and all resulted in one injury to plaintiff – the destruction of her home – one satisfaction rule applied); *American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 246 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (plaintiff sued multiple defendants for fraud, breach of contract, negligent misrepresentation, and DTPA related to purchase and installation of equipment; all claims were based on misrepresentations connected to the sale of the equipment, and thus were based on the same allegedly wrongful act; plaintiff could only recover for one cause of action, not all four).

Finally, as the San Antonio Court has explained with regard to the procedure:

"When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). "An election of remedies is the choosing of one or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." *Weeks Marine, Inc. v. Salinas*, 225 S.W.3d 311, 322 (Tex. App.—San Antonio 2007, pet. dism'd). . . . . A party prevailing on two or more theories need not formally waive all other alternative theories of recovery in electing a remedy, and where the prevailing party fails to elect a remedy, the trial court "should utilize the findings affording the greater recovery and render judgment accordingly." *Birchfield*, 747 S.W.2d at 367; *accord Boyce Iron Works*, 747 S.W.2d at 787.

*Drury Southwest*, 350 S.W.3d at 293.

## B. This Judgment Awards Double Recovery for a Single Injury

The following attempts to chart the improvident judgment entered here:

| Cause of Action | CURRENT<br><br>% Responsibility Found by Jury | JUDGMENT<br><br>% Liability Imposed in Judgment | Damages Found by Jury | Judgment Award |
|---|---|---|---|---|
| **Breach of Contract** | Padre only | Padre 100% | $1.3 Million<br>+<br>$350,000 attorneys' fees | $1.3 M. actual dams $\pm$ $585,000 pre-j interest $\pm$ $350,000 attorneys' fees<br><br>=**$2,235,000** |
| **PLUS** | | **PLUS** | | **PLUS** |
| **Fraud/ "Tort"** | **NONE** (no proportionate responsibility question submitted for fraud) | NTRP – joint and several 100%<br><br>Sepco – 20%<br><br>Sepco SA – 20%<br><br>**\*\*Judgment wrongly uses jury's % responsibility findings for products liability to apportion responsibility for fraud** | $1.3 Million<br><br><br><br>++<br>$350,000 total exemplary damages | $1.3 M. actual dams $\pm$ $585,000 pre-j interest<br><br>$260,000 actual dams $\pm$ $117,000 pre-j interest<br><br>$260,000 actual dams $\pm$ $117,000 pre-j interest<br><br>NTRP - $210,000<br><br>Sepco $70,000<br><br>Sepco SA - $70,000<br><br>= **$2,235,000** |
| Products liability | NTRP – 60%<br>Sepco – 20%<br>Sepco SA – 20%<br>Padre– 0% | NTRP – 60%<br>Sepco – 20%<br>Sepco SA – 20%<br>Padre – 0% | $1.3 Million | Combined with Fraud to Impose $2.235 Million "Fraud/Tort" Liability |

| GRAND | TOTAL | OF | JUDGMENT | $2,235,000 contract<br><br>+ $2,235,000 fraud/tort<br><br>= $4,470,000 |
|---|---|---|---|---|
| | | | | |
| | **"ALTERNATE**<br><br>**Breach of Contract** | **RECOVERY**<br><br>**$2.235 Million** | **FOR TORT**<br><br> **PLUS** | **CLAIMS"** |
| Breach of Warranty<br><br>(judgment also lists products findings as basis for this recovery, but percentages used are from warranty submission) | Padre- 10%<br><br><br><br><br>Sepco- 20%<br><br><br>Sepco SA – 20%<br><br>NTRP- 50% | Padre – 10%<br><br><br><br><br>Sepco – 20%<br><br><br>Sepco SA – 20%<br><br>NTRP – 50% | $1.3 Million | $130,000 actual dams + $58,500 interest<br>** This is in addition to the damages and interest already awarded against Padre for breach of contract; Padre would now pay more than the actual damages found by the jury for the single injury<br><br>$260,000 actual dams + $144,331 interest (judgment calculation in error)<br><br>$260,000 actual dams + $144,331 interest (same)<br><br>$520,000 actual dams + $228,664 interest<br><br>=**$1,885,000** (with proper interest calculation) |
| **GRAND** | **TOTAL** | **OF** | **ALTERNATE JUDGMENT** | $2,235,000 contract<br><br>+ $1,885,000 warranty<br><br>= $4,120,000 |

17

As mandated by the precedent established by the Texas Supreme Court and this Court (and others), the trial court could not allow UR double recovery. UR sustained, if at all, a single injury.

**C. The Record Establishes UR Tried this Case Asserting a Single Injury**

Throughout this litigation and at trial UR sought one recovery for one injury: the loss of the Garcia No. 1 Well allegedly caused by defective pipe.

**1. The Pleadings**

In its last live pleading (CR 79-90 [4th Am Pet]), UR alleged:

"For use in its newly-drilled Garcia No. 1 well ("the Garcia Well"), United purchased new wellbore casing provided by Defendants. United ordered and Defendants represented that they were providing to Plaintiff wellbore casing which met the grade, quality, and specifications identified as 'API P-110 casing.'" "At all relevant times, Defendants represented that the 4-1/2" pipe manufactured by Defendants and sold to Plaintiff met the standards established by the API P-110 pipe." (CR 82) "The metallurgical analyses conducted on the joints of casing conclusively establish that the casing provided by Defendants did not satisfy API specifications for P-110 quality pipe." (CR 83). UR alleged that all Defendants knew the casing was not as represented and did not meet the specifications or quality represented (*id*., accord CR 202-203 [1st Supp.], 245-48 [3d Supp.]).

"As a result of the collapse of the defective casing provided by Defendants,

United was forced to abandon the Garcia Well which was a total loss." (CR 82) "If the casing had been as represented, United would not have lost its Garcia Well." (CR 83) "As a result of the defect in the casing and Defendants' conduct, United sustained damages including, but not limited to, the loss of the Garcia Well and cost associated with attempts to salvage the Garcia Well, . . . . United seeks damages of at least $2,700,000 plus . . . attorneys' fees . . . ." (CR 88)

Every cause of action alleged by UR expressly incorporated the identical Facts alleged in the Petition (CR 83-88). The alleged damage caused was submitted in one paragraph below all the claims alleged; the same damage was alleged no matter the cause of action asserted (CR 88).

## 2. Trial Argument by UR

During arguments on motions in limine, UR's counsel made clear, "It's just our out-of-pocket cost we're going for here." (RR15:35) The court said, "Let me try to understand what their damages are. Are your damages the amount of money you put into drilling that hole?" UR's counsel responded, "Yes sir. Drilling and completion and attempt to remediate the first failure, and then attempt to investigate the second failure. At that point that's where we stopped calculating damages. That's what we lost." (RR15:36) "So our measure of damages is what were we out when the well – when their product, their defective product failed. That's what the measure of damages is. That's what we're asking for the jury." (RR15:39)

### 3. Charge Conference

At the Charge conference, Defendants objected that the Charge did not separate liability and damage questions between the upper and lower well incidents (RR29:95). UR's counsel argued in response: "we have one transaction" and submitted both incidents combined in all liability and damages questions (RR29:95-96). The trial court recognized:

> See, it's not a multiple theory of liability. It's – it's the same string that was purchased. [I]f you believe the plaintiff's case, the plaintiff's case is, we ordered a product. We ordered it in a specific manner. We got a product that was not entirely – it wasn't the right stuff like we ordered. It – it caused these failures. So, there's only one theory of – I mean, the theory of liability for purpose of the damages is –

(RR 29:128). The court also noted:

> And you're saying "Yeah, but we bought – it was one order for the sale of pipe. Not two orders for the sale of pipe but one order for the sale of pipe."

(RR29:117). UR's counsel argued, "Yes sir. . . . We see them as all being essentially *one transaction, one string of pipe, one misrepresentation*." (*id.*) (emphasis added) The Court recognized "It was one sale one purchase," to which Mr. McElroy responded, "*It was one sale. Yes sir*." (*id.*) (emphasis added)

Appellants proposed a Charge that included only one damage submission for all causes of action but the court refused citing a *Casteel* concern if there was no evidence to support one of the theories of recovery (RR29:100, 119; Defs' Non-Jury Exh. 21).

### 4. The Jury Charge

UR submitted its case to the jury as follows:

***Breach of contract*** (CR 745-747, Qs. 1-5):

"Did Sepco Tubulars, Inc. and Padre Tubulars, Inc. agree to provide to United Resources, LP 4-1/2 inch 13.5 pound API 5CT P-110 casing for use in the Garcia No. 1 Well?"

"Did Padre fail to comply with the agreement?"

"What sum of money, if paid now in cash, would fairly and reasonably compensate [UR] for its loss, if any, as a result of the breach of the agreement? Damages are those which naturally and necessarily flow from the failure to comply with its agreement."

***Fraud*** (CR 748, Q. 6):

"Did the fraud, if any, of those named below proximately cause the damage to the Garcia No. 1 Well?"

"Fraud occurs when a party fails to disclose a material fact within the knowledge of that party, and . . . the other party suffers injury as a result of acting without knowledge of the undisclosed fact."

***Breach of Warranty*** (CR 750, Q. 9):

"Was there a breach of an implied warranty of fitness for a particular purpose, and, if so, did such breach proximately cause the damage, if any, to the Garcia No.

21

1 Well?"

***Damages for Fraud and Breach of Warranty submitted in the same Question***
(CR753, Q. 12):

"If you answer "yes" to any portion of Questions 6 [fraud], 7 [conspiracy], or 9 [breach of warranty] as to any of the Defendants then answer the following question."

"What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [UR] for its damages, if any, to the Garcia No. 1 Well?"

***Products Liability*** (CR 754-760, Qs. 13-20):

"Was there a manufacturing defect in the pipe sold to [UR] at the time it left the possession of the Defendants that was a proximate cause of the damage in question?"

"Did the Defendant-Seller make an express factual representation about the quality of the pipe that was incorrect that [UR] relied upon in obtaining or using the pipe and [UR] suffered damages to the Garcia No. 1 Well which [UR] would not have suffered if the product had been as represented?"

"What sum of money, if paid now in cash, would fairly and reasonably compensate [UR] for its damages, if any, to the Garcia No. 1 Well?"

The injury was the same, and the damage question and model were the same, under every theory of recovery.

## 5. Closing Arguments

Indeed UR's counsel made this clear during closing arguments. He told the jury "They should have disclosed the manufacturing problems . . . . So we ask you to render a verdict and award United its damages for the loss of the Garcia No. 1 Well . . . ." (RR 30:93) "They never told anybody they had a problem. . . . . And it caused the loss of the Garcia No. 1 Well." (RR30:99) When asking the jury to award damages for fraud and breach of warranty (CR 753, Q. 12) he said: "Question No. 12 is the question about what damages. And the damage number was testified to by Mr. Watson. And this is for the loss -- the loss of Garcia No. 1 well. And our damages are $2,876,086.23." (RR30: 106) Regarding products liability: "When it gets to No. 19, and you're talking about allocating responsibility for the defective product . . . . Damage question in connection with those claims; it's the same answer as we gave before, it's $2,876,086.23." (RR30: 108) "[T]he answer for that question, the loss of the Garcia No. 1 Well." (RR30:108)

In summation, UR argued, "Our injuries and our damages are for the well; the $3 million – the 3 or $4 million as Mr. Watson testified." (RR30:164)

The jury was properly instructed in the Charge Preamble not to increase or reduce the amount in one answer because of their answer to any other question about damages (CR743). They were told not to speculate about what any recovery might be; that the court would apply the law to the answers at the time of judgment (*id*).

The jury found the precise same damage amount for every theory submitted: $1.3 Million (CR 747, 753, 760). There is nothing in the record to indicate the jury did not follow the court's instructions. The court however did not follow the law when it entered judgment.

**D. The Judgment Morphs Together Various Findings to Create Erroneous Awards**

The judgment is also in error because it merges the fraud, warranty, and products liability jury findings together to create one impermissible combined recovery, entitled "Judgment for Tort Claims" (CR 843). There are several critical errors with this approach, including but not limited to:

First, the jury found different parties responsible and made different apportionment of responsibility findings for warranty (Padre 10%, Sepco 20%, Sepco SA 20%, NTRP 50%) (CR 752) and products liability (Padre found not liable, Sepco 20%, Sepco SA 20%, NTRP 60%) (CR 759). The jury did not make any apportionment findings for fraud. The judgment cannot combine all those varying answers regarding apportionment of responsibility but rather must apply the correct percentages to corresponding claims (if percentages exist, and assuming UR can recover).

Under the statutes, NTRP is not jointly and severally liable on the warranty claim because NTRP was not found by the jury to be "greater than 50 percent" responsible. TEX. CIV. PRAC. & REM. CODE § 33.013(b)(1). Therefore, NTRP

24

cannot be held responsible for 100% of the warranty claim, it can only be responsible for 50% of the warranty damage award (if at all). The Judgment is wrong to hold NTRP jointly and severally liable on that claim.

Exemplary damages are not recoverable on a UCC warranty claim. *Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex.App.—Amarillo 1977, no writ). And UR did not hook the exemplary damages question to any theory of liability other than fraud (CR 763). UR has accepted the verdict without condition. Exemplary damages are not recoverable on the products liability claim. The judgment improperly includes exemplary damages for "Tort Claims."

Attorneys' fees are not recoverable on fraud, warranty, or products liability claims, so UR cannot recover attorneys' fees under any of those theories of liability. TEX. CIV. PRAC. & REM. CODE 38.001; *Zorilla, supra*. UR cannot recover attorneys' fees for a "tort."

### E. Conclusion: This Court Cannot Sustain this Multiple Recovery

UR cannot have a double recovery. UR cannot recover for breach of contract *plus* fraud, products liability and warranty combined. Nor can UR recover on the alternative judgment, that is, for breach of contract *plus* breach of warranty/products liability. All theories of liability resulted in the same alleged injury. In the alternative judgment, in addition, UR is wrongfully recovering against Padre twice for the same injury resulting in an actual damage award greater than the actual

25

damages found by the jury. That too is a violation of the One Satisfaction Rule.

In addition the judgment cannot award attorneys' fees on a contract claim *plus* exemplary damages on the "fraud/tort" claim when there is one indivisible injury. UR cannot recover attorneys' fees on a fraud claim, or exemplary damages on a contract claim. *See*, *Zorilla*, 421 S.W.3d at 66-67. And, UR cannot be awarded prejudgment judgment interest multiple times for the same damage award for a single injury. Prejudgment interest currently totals over $1,170,000. This Judgment must be reversed.

## II. UR Cannot Recover More than $200,000 in Actual Damages Based Upon the Testimony of Its Own Corporate Representative

UR is entitled to only one recovery. The question remains under what theory it can recover and in what amount. The trial court should disregard a jury finding and grant a motion for JNOV when an issue contrary to the jury's finding has been established as a matter of law, that is, the evidence is conclusive on the issue. E.g., *Gallas v. Car Biz., Inc.*, 914 S.W.2d 592, 593 (Tex.App.—Dallas 1995, writ denied). The record established a reduced damage award.

At trial, UR's President Brad Watson was the only witness to testify about UR's damage model. He told the jury that UR sold its eight wells - including this Garcia No. 1 well – in 2008 for a net profit of approximately $32 Million (DX-45; 27:142-43, 144; 18:24 [accord, Allen]). Watson testified UR may have made $200,000, or lost $200,000, or broken even on the Garcia No. 1 well (27:146, 151-

152, 164; 18:24 [accord, Allen]).

Appellants argued at length in their Motion for JNOV and in their post-judgment motion that there was no evidence to support the jury's finding of $1.3 Million in damages (CR 802-22, 823-35, 848-76). The jury was asked, in every damage question, "what sum of money would fairly and reasonably compensate [UR] for its loss/damage, if any?" (CR 747, 753, 760). Given the above damage testimony came directly from a UR witness – a high ranking officer no less – the evidence was conclusive on the issue: UR sustained, at most, only $200,000 in loss/damages on the Garcia No. 1 Well. Therefore, UR can recover at most $200,000 in actual damages. Prejudgment interest must be re-calculated accordingly as the law requires.

## III. UR Cannot Recover for Breach of Contract

A jury finding should be disregarded and motion for JNOV granted when there is no evidence to support the finding. *Tiller v. McLure*, 121 S.W.3d 709 (Tex. 2003); *Siller v. LLP Mortgage Ltd.*, 2013 Tex. App. LEXIS 4520, *23 (Tex.App.—San Antonio 2013, pet. denied) (affirming JNOV entered by trial court), or when an issue contrary to the jury's finding has been established as a matter of law, that is, the evidence is conclusive on the issue. E.g., *Gallas*, 914 S.W.2d at 593. Appellants sought a judgment n.o.v. on the contract claim (CR 804-807).

In its answers to Questions 1, 3, 4, and 5, the jury found that only Padre Tubulars

27

(and not Sepco Tubulars) had an agreement with United Resources.  UR has accepted that verdict (CR 791-799) so Sepco Tubulars is properly absolved of liability.[1]  As for Padre, UR cannot recover against it for breach of contract.

The contract executed by Padre (as Contractor) and UR (DX-52) expressly provides as follows, in pertinent part:

OILFIELD SERVICES TERM AGREEMENT

This Agreement is entered into as of the 29ᵗʰ day of March [2008] by United Resources, LP ("United") and Padre Tubular, Inc. ("Contractor")

1.    WORK:
      1.1    This Agreement shall apply to all the services and goods provided by Contractor at the request of United during the term of this Agreement ("Work") . . .
                * * *
      1.4 The parties agree that Contractor's materials, equipment, and supplies used by Contractor in the performance of Work shall be brought to the Work site in working order, kept in good repair and shall remain in Contractor's sole care, custody, operation, and control at all times.

12.    Responsibility for Loss or Damage to the Equipment or the Hole:

      * * *
      12.5  THE HOLE.  If the hole should be lost or damaged while contractor is working, *United* shall be responsible for the damage to or loss of the hole, *including the casing therein*, as well as for the cost of regaining control of any wild well, *unless* such loss is due to the sole negligent acts or omissions or willful misconduct of contractor [Padre].

(DX-52) (emphasis added).  The 8-page contract includes warranty, insurance, and

---

[1] *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989).

28

indemnity provisions back and forth as well as an "Entire Agreement" clause (*id.*).

At its conclusion, the contract states:

> EACH OF THE PARTIES HERETO SPECIFICALLY ACKNOWLEDGES AND AGREES . . . (C) THAT IT RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS AGREEMENT PROVIDE FOR THE ASSUMPTION BY ONE PARTY OF, AND/OR RELEASE OF THE OTHER PARTY FROM, CERTAIN LIABILITIES ATTRIBUTABLE TO THIS TRANSACTION OR THE PREMISES COVERED HEREBY THAT SUCH PARTY WOULD OTHERWISE BE RESPONSIBLE  FOR UNDER THE LAW.

(DX-52 at p. 7)  Beneath this Disclosure, the contract is signed by Brad Watson for UR and by Thomas Herrlich for Padre (*id.*)

A contract is to be reviewed and interpreted in its entirety, looking to the four corners of the document. *FPL Energy, LLC v. TXU Portfolio Mngmt. Co., LP*, 426 S.W.3d 59, 63 (Tex. 2014).   As the Supreme Court held in *FPL*, "Our primary concern in contract interpretation is to 'ascertain the true intentions of the parties as expressed in the instrument.' We consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless." *Id*. (quoting and citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "Further, *we 'construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served*." *Id*. (quoting *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)) (emphasis added).

UR brought suit and submitted its case to the jury asserting that the hole, including the casing therein, was lost or damaged because the product provided by

29

Padre pursuant to the Agreement failed. UR contracted with Padre to provide casing used to drill the Garcia No. 1 Well. Under its contract, the parties agreed that Contractor Padre's materials remained in Padre's sole care, custody, operation and control. If the hole was damaged while Contractor was working – which necessarily was the case because Padre's casing was being used in the Well when the alleged loss occurred and Padre was in sole care, custody and control of the casing during that time, according to the contract – then UR was responsible for that damage, *unless* Padre was found solely negligent or committed some willful misconduct.

Critical here, UR non-suited its negligence claim against Padre, and the jury found Padre did not commit fraud (CR 738 [Notice of Nonsuit], CR 748 [Charge Q. 6]). Therefore, UR is precluded from recovering on its breach of contract claim under the terms of the contract it executed. All of the jury's findings favorable to UR regarding breach of contract (CR 745-747 [Qs. 1-5], CR 761, Q. 21 [attorneys fees]) should have been disregarded. Judgment must be rendered that UR take nothing by its breach of contract claim. UR cannot recover for breach of contract.

## IV. UR Cannot Recover for Fraud

### A. UR Did Not Submit a Proportionate Responsibility Question for Fraud, Instead Relying on a Conspiracy Theory the Jury Refused to Find

NTRP filed a motion for j.n.o.v., objections to the entry of judgment on the verdict, and a motion to vacate, urging that UR could not recover on a fraud theory

(CR 802-822, 823-835, 848-876). A judgment notwithstanding the verdict is proper when a legal principle bars the plaintiff from recovery. *See*, *John Masek Corp. v. Davis*, 848 S.W.2d 170, 178 (Tex. App.—Houston [1ˢᵗ Dist.] 1992, writ denied). A jury finding can also be disregarded because it is immaterial. *Farias v. Laredo Nat'l Bank*, 985 S.W.2d 465, 470 (Tex.App.—San Antonio 1997, pet. denied) (JNOV entered by trial court affirmed).

The judgment improperly uses the jury's products liability percentages of responsibility to apportion responsibility to the defendants on the fraud claim (CR 843-44 [Judgment], 759 [products percentages], 748, 752 [no percentage question submitted for fraud]). The jury found Sepco and Sepco SA each 20% responsible for products liability, and NTRP 60% responsible (CR 759). UR applies those percentages to the *fraud* claim to assess *fraud* damages 20% to Sepco, 20% to Sepco SA and joint and several liability on NTRP. Such an outcome is absolutely improper and utterly defies the law and the record.

The Texas Civil Practice and Remedies Code expressly mandates:

> ***The trier of fact, <u>as to each cause of action asserted</u>, shall determine the percentage of responsibility***, stated in whole numbers, for the following persons **with respect to each person**'s causing or contributing to cause in any way the harm for which recovery of damages is sought . . . .:
>
> (1) Each claimant;
>
> (2) Each defendant

(3) Each settling person; and

(4) Each responsible third party who has been designated under Section 33.004.

TEX. CIV. PRAC. & REM. CODE § 33.003(a) (emphasis added). The trier of fact in this case was the jury. The jury did not determine the percentage of responsibility with respect to any party as to the cause of action asserted for fraud. The only question the jury was asked was whether the defendants conspired to commit fraud, and the jury found "no." (CR 749)

Texas Civil Practice and Remedies Code 33.013 continues with the mandate:

> *[A] liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact* equal to that defendant's percentage of responsibility with respect to the . . . harm for which damages are allowed.

TEX. CIV. PRAC. & REM. CODE § 33.013(a) (emphasis added). Again, the trier of fact – the jury – did not find a percentage of the damages or a percentage of responsibility as to any defendant relative the cause of action asserted for fraud. The trier of fact properly found no conspiracy (CR 749).

Therefore, the trial court could not assess damages against any defendant for fraud. UR waived recovery by failing to obtain the necessary findings from the jury. TEX. CIV. PRAC. & REM. CODE §§ 33.003(a), 33.013(a). The fraud findings the jury did make in answer to Question 6 were rendered immaterial because there was no corresponding apportionment of responsibility. Judgment should have been

rendered that UR take nothing.

Further, in the absence of actual damages, there can be no exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.004(a) ("exemplary damages may be awarded only if damages other than nominal damages are awarded."); *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 660 (Tex. 2012); *Doubleday & Co. v. Rogers*, 674 S.W.2d 751, 754 (Tex. 1984) ("There can be no exemplary damages in the absence of a recovery of actual damages."). Because UR cannot recover actual damages for fraud, exemplary damages – which were expressly hooked only to the fraud claim (CR 763) – are unrecoverable as well.

To support its judgment UR argues that conspiracy to commit fraud is its own cause of action, and thus if no proportionate responsibility question was submitted on the fraud claim that was somehow Appellants' fault. UR is wrong. First, Appellants did object to the multiple submission of proportionate liability questions, contending that one such question should be submitted to cover all causes of action, because otherwise it was confusing (RR 30:46-47, 59). Appellants proposed that the Charge list all causes of action, with one proportionate responsibility question to follow (RR 29:100). UR objected and the trial court refused (*id.*).

Second, conspiracy is not a stand-alone cause of action, it is a basis to impose joint and several liability. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). "[A] defendant's liability for conspiracy depends on participation in

some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). A conspiracy question must be conditioned on a finding of a tort. TEXAS PATTERN JURY CHARGES – BUSINESS PJC 109.1 (2014). Conspiracy "is a means for imposing joint and several liability on persons in addition to the actual perpetrator(s) of the underlying tort." *Id.*, *Comment*, "When to use." Alleged proof of a conspiracy does not by itself create liability. *Schlumberger Well Surv. Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856-57 (Tex. 1968).

In apparent recognition of that fact, at the charge conference UR said "the conspiracy question relates to the fraud" (CR 29: 96). And in the Charge, UR's conspiracy submission is expressly hooked to the fraud liability question:

Question Number 6 (CR 748):

"Did the fraud, if any, of those named below proximately cause the damage to the Garcia No. 1 Well?"

Question Number 7 (CR 749):

"Answer the following question only if you answered 'yes' to Question 6 as to any of the Defendants. If you did not answer "yes" to Question 6 as to any of the Defendants do not answer the following question."

"Do you find there was a conspiracy to sell casing to [UR] which did not comply with the requirements of API 5CT P-110?"

During closing arguments UR's counsel argued, "So the questions concerning fraud beginning with Question No. 6, we think the answers to those questions are yes; that the whole bunch of them were engaged in this marketing of pipe that was defectively manufactured." (RR 30:100)

***The jury found "No" to UR's conspiracy theory***. UR did not contest that finding in any way, instead filing an unqualified motion to enter judgment on the verdict, thereby waiving any assertion that the jury's answer was wrong (CR 791-795).[2] It was not Appellants' burden to submit an apportionment of responsibility question. UR fails to escape the clear mandates of the Texas Civil Practice and Remedies Code.

## B. No Duty to Disclose

In addition, on the merits, Appellants had no special relationship with UR that would give rise to a duty to disclose as required to present a fraud by non-disclosure claim. UR requested submission of fraud by nondisclosure as follows (CR 748):

QUESTION NUMBER 6

Did the fraud, if any, of those named below proximately cause the damage to the Garcia No. 1 Well?

Fraud occurs when:

1. A party fails to disclose a material fact within the knowledge of that party, and

2. The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

---

[2] *Fojtik*, 775 S.W.2d at 633.

3. The party intends to induce the other party to take some action by failing to disclose the fact, and

4. The other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No"

An important element of the claim remains that the defendant had a duty to disclose to the plaintiff. *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Appellants moved for a directed verdict (RR29:73-74) and later objected that UR's submission had to include a duty element and there was no evidence of duty; the court submitted the claim as UR requested and refused to address duty (RR29:103-104, RR30:42-43).

"Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship. Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." *Morris*, 981 S.W.2d at 674. "Outside of the cases in which formal fiduciary duties arise as a matter of law, confidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* "Mere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Id.*

36

(quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex 1997)). In *Morris*, the Supreme Court held there was no evidence of a long-standing relationship between the plaintiff and defendant such that the defendant had a duty to disclose; thus, there was no evidence of fraud. *Id.* at 674-75.

Likewise in this case there is no evidence of a long-standing relationship between NTRP and UR, or Sepco and UR, or Sepco SA and UR, or Padre and UR. No witness testified to any prior relationship at all. UR called three vendors and Padre won the bid for the 4 ½" P-110 pipe used on the project (RR16:161). UR had no idea where the pipe came from until it received the MTRs from Padre – after the alleged failures at issue (RR16:206-07, 260, 262-63, RR19:45-46). Rick Allen did not see any MTR's before the pipe was purchased and he did not rely on any representations made in them before he purchased (RR18:137). He spoke with no one at NTRP, Sepco, or Sepco SA before buying the casing (RR18:134-135; accord RR25:221-222 [NTRP corporate rep]). He testified he thought both Sepco and Sepco SA were responsible simply because they imported pipe for NTRP (RR19:42-43) and Sepco SA should be responsible because its name is related to Sepco Tubular's (RR19:45-46).

These defendants had no duty to disclose and there can be no recovery for fraud.

## C. No Evidence of Knowledge of Any Alleged Defect

In addition, there is no evidence Sepco Tubulars, NTRP, or Sepco SA failed to

disclose a material fact within their knowledge. Tor Vatne, President of Sepco Tubulars at the relevant time, testified that a mill is put through a stringent API audit in order to be able to say it is producing API pipe (RR25:226) (NTRP has been API-certified since 1990 (RR25:72)). When the pipe arrives in the U.S. a third party runs an electromagnetic test and a drift to ensure proper clearance (RR25:201-202, 232-33). P-110 is verified by looking at the stencils (RR25:210) and reject pipe is put off to the side and marked (RR25:202).

Artur Popov, Quality Assurance Specialist for Sepco SA (RR26:44-45), testified that an investigation into the cause of UR's claims was conducted (RR26:48). It was determined that all the pipe at issue was a specific product manufactured at the mill in one particular lot (RR26:49). Quality control documentation was used to determine that the heat treating process equipment at the mill was faulty *and the local inspections did not uncover the problem before the pipe was shipped to the U.S.* (RR26:50).

Mark Buehler, the Manager of Stork Testing and Metallurgical Consulting (RR25:29), visited the NTRP plant to provide failure analysis, testing, and consulting work (RR25:31). He made recommendations to improve quality and those were accepted and made (RR57-58). He testified that, in addition, multiple tests performed on casing showed it met standards even higher than API-110 5CT (RR25:82, 83). Buehler told the jury there was not an endemic problem at the plant

(RR25:86-87).

Tor Vatne categorically denied any allegation of knowing misrepresentations, fraud, or conspiracy (RR25:236-239, 240-41, 243). He testified NTRP supplied the product in good faith and followed all normal procedures (RR25:241). No one in the chain but NTRP makes an independent representation that the pipe is API-110 (RR25:235). Sepco's exclusive purpose is to sell NTRP pipe in the U.S. via Sepco SA (RR25:195, 198). Padre is simply a pass-through dealer (RR25:242). The jury found Padre did not commit fraud (CR 748).

On the basis of the foregoing, exemplary damages – which were specifically hooked only to the fraud question (CR 763) – are not recoverable on the merits. There is no evidence, let alone clear and convincing evidence, of fraud or malice, that is, a specific intent to injure or harm UR (CR 763).

UR must take nothing by its fraud claim against NTRP, Sepco and Sepco SA.

## V. UR Cannot Recover for Breach of Warranty of Fitness for a Particular Purpose

The judgment includes an "alternative" recovery purportedly for breach of contract plus breach of warranty of fitness for a particular purpose (CR 845 [Judgment], 750 [Charge, Ques. 9]). It is noteworthy that the jury sent out a note during deliberations as to this warranty question: "Not sure we understand question #9. Please make more simple." (CR 790)

**A. This Casing was Not Purchased for an Unusual Purpose; the Particular Purpose Warranty Does Not Apply**

The simple truth about UR's theory of breach of warranty of fitness for a particular purpose is that this is a precise theory of liability under the Texas Business and Commerce Code, Section 2.315: "Where the seller at the time of contracting has reason to know any *particular purpose* for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for *such purpose*." (emphasis added)  The law provides the "particular purpose" must be a *non-ordinary* purpose.  When a product is purchased for an ordinary purpose, only the implied warranty of merchantability is implicated, and that is a different warranty and a different submission.  TEX. BUS. & COM. CODE § 2.314(b)(3).  *Compare*, TEXAS PATTERN JURY CHARGES – BUSINESS PJC 102.11 (2014) (Instruction on Implied Warranty of Fitness for Particular Purpose – Goods: "Furnishing or selecting goods that were not suitable for a particular purpose if [Defendant] knew the purpose and also had reason to know that [Plaintiff] was relying on [Defendant's] skill or judgment to furnish or select suitable goods.") *with* PJC 102.10 (Instruction on Implied Warranty of Merchantability – Goods: "Furnishing goods that, because of a lack of something necessary for adequacy, were not fit for ordinary purposes for which goods are used").  UR plead merchantability but did not submit it (CR 84-85).

This Court is well familiar with the concept of fitness for a particular purpose. A particular purpose requires a use specific to the plaintiff's business, otherwise only the implied warranty of merchantability applies. *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex.App.—Corpus Christi 1994, no writ) (purchase of sorghum seed by farmer was ordinary, not unusual use). That particular purpose must not be ordinary, it must be something other than what the goods are customarily used for. *JCW Elecs., Inc. v. Garza*, 176 S.W.3d 618, 630-31 (Tex.App.—Corpus Christi-Edinburg 2005), *rev'd on other grounds*, 257 S.W.3d 701 (Tex. 2008) (phones installed in jail cells were for specific purpose: they could not be used by unattended inmates); *Sipes v. General Motors Corp.*, 946 S.W.3d 143, 158-59 (Tex.App.—Texarkana 1997, writ denied) (airbag used for ordinary purpose does not implicate particular purpose warranty); *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex.App.—El Paso 1996, no writ) (vacuum equipment used for ordinary purpose did not implicate particular purpose warranty).

There is no evidence UR was using the casing for any purpose other than its ordinary purpose, that is, to run in an oil and gas well. This was "cookie cutter" drilling according to UR's President Brad Watson (RR27:24). Watson testified, "I knew [Rick Allen] had lots of analogous wells to base his design on. So it was nothing new that he was using casing. So I wouldn't have looked a second time about weight of casing or his casing design." (RR27:24-25)

41

**B. UR Did Not Rely on Appellants' Skill and Judgment Before Purchasing the Casing**

In addition, UR representatives testified that no reliance was placed on the defendants when UR purchased the casing; UR was not relying on any alleged skill and judgment of Padre, Sepco Tubulars, NTRP, or Sepco SA to furnish suitable goods (CR 750, Q. 9). UR did not rely on the vendors to tell it what kind of casing to use (RR27:26, 28). UR does the design and decides what kind of casing it needs in terms of weight, grade, etc. (RR27:26). Rick Allen did the casing design for UR (RR27:80). UR "specs it out," then asks the pipe company to supply the casing UR has determined it needs (RR27:26). Allen picked Padre as the vendor (RR27:80). Allen testified unequivocally that he did not rely on Padre, NTRP, Sepco or Sepco SA (or any defendant), to tell him what kind of pipe he needed for this application; he made those decisions himself (RR18:135-136).

Rick Allen testified he spoke with no one at NTRP, Sepco, or Sepco SA before buying the casing, and no representations were made to him by any of those companies before he bought the pipe (RR18:134-135). Watson agreed that UR relied on Rick Allen to determine the weight and strength of the casing necessary to drill the well (RR27:24-25). Allen did not see any MTR's before the pipe was purchased and he did not rely on any representations made in them before he purchased (RR18:137).

Tor Vatne testified that no one in the chain but NTRP makes an independent

42

representation that the pipe is API-P110 (RR25:235). He categorically denied any allegation of knowing misrepresentations, or fraud (RR25:236-239, 240-41, 243). He testified NTRP supplied the product in good faith and followed all normal procedures (RR25:241).

Thus, UR was **not** relying on the skill and judgment of Padre, Sepco, NTRP, or Sepco SA when it ordered casing for the Garcia No. 1 Well and it was not buying the casing to use for a non-ordinary purpose. Rick Allen knew the casing UR needed to run in this well, in UR's ordinary course of business. Allen simply ordered the casing he determined UR needed to drill the well, and Padre delivered the casing he requested. No defendant was involved in UR's decision about what pipe to purchase. UR was not using the pipe for anything out of the ordinary. The concept of "particular purpose" fails to apply here.

UR cannot recover for breach of warranty of fitness for a particular purpose.

## VI.   UR Cannot Recover for Products Liability

The jury properly determined that Sepco, Sepco SA and Padre were not manufacturers of the pipe (CR 755). UR has accepted that finding (CR 791). The jury found Sepco, Sepco SA, Padre and NTRP were sellers of the pipe (CR 756). The jury ultimately found Padre is not responsible for damages under a products theory (CR 759) and UR has accepted that finding as well (CR 791). Therefore this discussion relates to Sepco, Sepco SA and NTRP only.

43

## A. The Sellers Made No Express Representations and Had No Knowledge of an Alleged Defect at the Time They Supplied the Casing

To establish liability for a product on a nonmanufacturing seller, the plaintiff has to prove one of a litany of actions on the part of the seller. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(1)-(7). As pertinent here, UR submitted the following: "Did [Sepco SA, Sepco and/or NTRP] make an express factual representation about the quality of the pipe that was incorrect that UR relied upon in obtaining or using the pipe" which caused UR damages (CR 757). *Id.* at § 82.003(a)(5). "Did [Sepco SA, Sepco and/or NTRP] actually know of a defect in the pipe at the time [they] supplied the pipe?" (CR 758). *Id.* at § 82.003(a)(6). The jury answered yes to both but the evidence belies those findings.

As explained in the fraud and warranty arguments above, no Appellant made an express representation about the pipe. Rick Allen did not see any MTR's before the pipe was purchased and he did not rely on any representations made in them before he purchased (RR18:137). He spoke with no one at NTRP, Sepco, or Sepco SA before buying the casing and no representations were made to him by any of those companies before he bought the pipe (RR18:134-135; accord RR25:221-222 [NTRP corporate rep]).

Tor Vatne testified that no one in the chain but NTRP makes an independent representation that the pipe is API-P110 (RR25:235). Sepco's exclusive purpose is to sell NTRP pipe in the U.S. via Sepco SA (RR25:195, 198). Padre is simply a

44

pass-through dealer (RR25:242). Sepco and Sepco SA must be absolved of liability under an express representation theory. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(5).

Also as explained above, no Appellant actually knew of a defect to the product at the time any of them supplied the product. Vatne testified a mill is put through a stringent API audit in order to be able to say it is producing API pipe (RR25:226). When the pipe arrives in the U.S. a third party runs an electromagnetic test and a drift to ensure proper clearance (RR25:201-202, 232-33). P-110 is verified by looking at the stencils (RR25:210) and reject pipe is put off to the side and marked (RR25:202). Artur Popov testified that an investigation into the cause of UR's claims was conducted (RR26:48) and only one particular lot was at issue (RR26:49). Quality control documentation showed the heat treating process equipment at the mill was faulty but the local inspections *did not uncover the problem before the pipe was shipped to the U.S.* (RR26:50). Mark Buehler testified NTRP has been API-certified since 1990 (RR25:72) and multiple tests performed on casing showed it met standards even higher than API5CT (RR25:82, 83). There was not an endemic problem at the plant (RR25:86-87).

Vatne denied any allegation of knowing misrepresentations (RR25:236-239, 240-41, 243) and said NTRP supplied the product in good faith and followed all normal procedures (RR25:241).

NTRP, Sepco and Sepco should be absolved of liability on an actual knowledge of the defect theory.   TEX. CIV. PRAC. & REM. CODE § 82.003(a)(6).

## B. There is No Evidence the Casing was Dangerous to an Extent Beyond What an Oil and Gas Operator Would Contemplate

In addition there is no evidence of a manufacturing defect (CR 754).   The jury was asked:

QUESTION NUMBER 13

Was there a manufacturing defect in the pipe sold to United at the time it left the possession of the Defendants that was a proximate cause of the damage in question?

A "manufacturing defect" means that the product deviated in its construction or quality from its specifications or planned output in a manner that renders it unreasonably dangerous. An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

Answer "Yes" or "No".

There is no evidence the pipe was unreasonably dangerous, that is, dangerous to an extent beyond that which would be contemplated by the ordinary user of the pipe, with the ordinary knowledge common to the community as to the pipe's characteristics.  The pipe allegedly split or collapsed.  No witness testified that this was beyond the contemplation of an ordinary user of the pipe.  Rick Allen testified the pipe strength, grade and weight necessary for use in a well is dictated by the burst and collapse pressure involved in the particular drilling operation and depth

(RR16:158-59). Clearly burst and collapse is contemplated. In fact this well used three different weights, grades and sizes (RR16:161). When wells are drilled pressure tests are run; in this case the casing split or burst at 380 feet (16:167, 173-175, 176; PX- 2-A, 2-B [photos]). Undeterred, UR "got lucky" and was able to "back it off enough to boot it right below" (RR16:175). The joints of casing at issue were pulled out and replaced, then the new casing was tested with success and the well completion continued (RR27:29). They reached their target and the well began producing; Watson testified, "we were very pleased" (RR27:30).

Clearly a split is contemplated and can be managed. This was "cookie cutter drilling." (RR27:24) After the lower alleged failure, UR sidetracked and "It made a good Perdido well." (RR27:154; 19:24 [Allen: they hit a commercially viable area with consistent flow with the sidetrack])

To find a manufacturing defect the jury had to find the casing was unreasonably dangerous. Under this testimony they could not come to that conclusion. There is no evidence that a split in casing run down hole is beyond the contemplation of the ordinary user, that is, a company that has drilled hundreds of wells like UR.

Judgment must be rendered that UR take nothing by its products liability claims against each of these Defendants.

## VII. Pre-Judgment Interest Must be Modified if Any Judgment Can be Entered

If UR can recover at all, prejudgment interest must be significantly revised. The current judgment improperly awards prejudgment interest on multiple causes of action despite the fact that UR can only recover, if at all, for one single injury (CR 842-846). The judgment currently awards over $1.17 Million in prejudgment interest on a $1.3 million actual damage recovery (*id.*). "Prejudgment interest accrues on the amount of a judgment." TEX. FIN. CODE § 304.104. The rules regarding prejudgment interest, vis-à-vis the One Satisfaction Rule, are violated here. This judgment can only award recovery for one theory of recovery. Prejudgment interest can only be assessed once.

In addition as stated above, the judgment can award -- at most (and if at all) -- actual damages of $200,000. 5% prejudgment interest on that amount is $10,000 per year for a total of roughly $90,000 over 9 years (but that does not apply to all defendants and all 9 years should not be assessed as set forth below). This is a substantial reduction from $1.17 Million (prejudgment interest of $585,000 x 2) and the judgment must be modified as the law requires.

Further, UR did not add NTRP and Sepco SA to the lawsuit until May 7, 2007 (CR 17-30), 18 months after suit was filed against Sepco and Padre. Prejudgment interest can only accrue beginning on the earlier of the 180th day after the day the defendant receives written notice of the claim or the date suit is filed. TEX. FIN.

CODE § 304.104. UR submitted no evidence of a written notice of the claim to NTRP and Sepco SA. Therefore the date the suit is filed is the starting date. Prejudgment interest cannot begin to accrue against these two defendants until May 7, 2007, not December 19, 2005. Prejudgment interest has to be modified.

Also, the prejudgment interest amounts stated in the "alternative" judgment for breach of warranty are in error (CR 845-46). Given that the same actual damage award was found by the jury (and adopted in the judgment) for every theory alleged, the prejudgment interest would be the same under any theory. Prejudgment interest on the other causes of action is currently stated as approximately $585,000, including a per diem to the date of entry (CR 842-44). Prejudgment interest on the alternative warranty judgment is currently stated as $865,827 *without* the per diem (CR 845-46). If it can be said that UR can recover for breach of warranty, pre-judgment interest must be modified. And, as stated, given that NTRP and Sepco SA were added 18 months after the suit was filed, pre-judgment interest must be reduced as to them. The law makes clear how prejudgment interest is calculated. TEX. FIN. CODE §§ 304.103, 304.104.

Without waiving the foregoing, Appellants would also submit that given that UR argues this is a case involving damage to real property (RR 29:123), prejudgment interest is a function and creature of equity. *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Equity will not permit an award of $585,000

in prejudgment interest on a $1.3 million award, or $1,170,000 on a $2.6 Million award. UR filed this lawsuit in December 2005 then added two defendants 18 months later (CR 10). The case did not go to trial until September 2014 (RR vol. 15, *passim*), and UR did not seek the entry of judgment until over a month after the verdict, in November, 2014 (CR 791) -- ***nine (9) years after suit was filed***. Defendants moved for the entry of a docket control order when it could not get the case to trial (CR 72). UR sought a continuance (CR 259); Defendants sought another DCO (CR 296). Defendants opposed yet another continuance request from UR (CR 438, see 449). Defendants again sought a trial date (CR 482). The delays were improvident and prejudicial, and Defendants should not be taxed with prejudgment interest during that time. It is inequitable to tax Defendants with pre-judgment interest for 9 years.

## CONCLUSION

UR cannot obtain multiple recoveries for a single injury. UR cannot recover for both breach of contract and fraud/products, and it cannot recover for both breach of contract and breach of warranty. UR cannot recover attorneys' fees plus exemplary damages plus double or triple pre-judgment interest. This record establishes UR sustained, if at all, only one injury. UR is required, under the One Satisfaction Rule, to choose a theory of recovery.

UR cannot recover for breach of contract, because the contract between UR

50

and Padre expressly precludes recovery to UR under this record. The contract provides that Padre is only responsible for damages if it is solely liable for the alleged damages in tort or willful conduct. UR nonsuited its negligence claims against Padre and the jury found Padre did not commit fraud. Without a contract claim UR cannot recover attorneys' fees.

UR cannot recover for fraud, because UR failed to obtain the necessary jury findings to support the entry of judgment on that cause of action. UR cannot use products findings to support an award for fraud. TEX. CIV. PRAC. & REM. CODE §§ 33.003(a), 33.013. UR cannot recover on the merits, because Appellants had no duty to disclose to UR and they had no knowledge of any alleged defect in the pipe. Without a fraud claim, UR cannot recover exemplary damages.

UR cannot recover for breach of warranty of fitness for a particular purpose because UR did not purchase the pipe for an unusual purpose. It bought the pipe for the ordinary use of running it in an oil and gas well. That is warranty of merchantability, a theory UR did not submit. Further, UR did not rely upon the skill or judgment of any Appellant when obtaining the casing for the well.

UR cannot recover for products liability, because there is no evidence of express representation or knowledge of defect and the pipe was not unreasonably dangerous.

If UR can recover, only actual damages are available. Those damages must

be reduced under the testimony of UR's President.  Attorneys' fees and exemplary damages are not recoverable, and prejudgment interest can only be assessed once.

## **PRAYER**

WHEREFORE, Appellants NTRP, Sepco Tubulars, Inc., Sepco SA and Padre Tubulars, Inc. pray the Court to REVERSE the trial court's judgment.  If judgment is not rendered for Appellants that UR take nothing, then the judgment must be modified such that UR can only recover once for its single injury, in an amount not to exceed the jury's finding(s) (which UR has accepted) specific to a single theory of available recovery.  Appellants pray for the relief to which they are entitled.

Respectfully submitted,

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
State Bar No. 14650500
**LAW OFFICE OF AUDREY MULLERT VICKNAIR**
802 N. Carancahua, Ste. 1350
Corpus Christi, TX 78401-0022
(361) 888-8413; Fax (361) 887-6207
avicknair@vicknairlaw.com

Timothy R. Hightower
State Bar No. 00795421
thightower@hrcegal.com
Alexandra Mutchler
State Bar No. 24051102
amutchler@hrclegal.com
**HIGHTOWER | CAPELLAN**
1909 Arbor Street
Houston, Texas 77004
(832) 433-7279; Fax (832) 431-4288

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies, pursuant to TEX. R. APP. P. 9.4(i)(2)(B), that this computer-generated brief is **12,678** words long according to the word count of the computer program used to prepare this document (Microsoft Office Word 2003/2007), from the Statement of Facts through the end of the Prayer. Typeface font is 14-point in the body and 13-point in the footnotes.

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

## CERTIFICATE OF SERVICE

I certify that the foregoing Appellants' Brief has been served on the following parties, by and through their counsel, on this _8th day of September, 2015_, by the Tex. gov electronic filing system.

Michael E. McElroy
MCELROY, SULLIVAN & MILLER, LLP
1201 Spyglass, Ste. 200
Austin, TX 78746
mmcelroy@msmtx.com

*Attorneys for Appellee*

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

# No. 13-15-00151-CV

IN THE COURT OF APPEALS FOR THE
THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI-EDINBURG

**JSC NIZHNEDNEPROVSKY TUBE ROLLING PLANT a/k/a
NIZHNEDNEPROVSKY TRUBNY ZAVOD a/k/a INTERPIPE NTRP a/k/a NTRP,
et al.,**
**Appellants**
**v.**

**United Resources, L.P.,**
**Appellee**

From the 49th District Court of Zapata County, Texas
*{The Hon. Joe Lopez Presiding}*

## APPENDIX TO BRIEF OF APPELLANTS

A    -    Judgment (CR 841-847)

B    -    Jury Verdict (CR 741-767)

CAUSE NO. 6,112

UNITED RESOURCES, LP n/k/a
AUBRIS RESOURCES, LP

      Plaintiff

V.

SEPCO TUBULARS, INC. n/k/a NORTH
AMERICAN INTERPIPE, LTD., et al

      Defendants

DORA MTZ CASTAÑON
DISTRICT CLERK
2014 NOV 19 A 11: 08
FILED
ZAPATA COUNTY, TEXAS
BY

IN THE DISTRICT COURT OF

ZAPATA COUNTY, TEXAS

49th JUDICIAL DISTRICT

## FINAL JUDGMENT

On September 15, 2014 this cause came on to be heard and UNITED RESOURCES, LP n/k/a AUBRIS RESOURCES, LP ("United" or "Plaintiff") appeared in person and by attorney of record and announced ready for trial. SEPCO TUBULARS, INC. n/k/a NORTH AMERICAN INTERPIPE, INC., SEPCO SA n/k/a INTERPIPE EUROPE SA, JSC NIZHNEDNEPROVSKY TUBE ROLLING PLANT a/k/a NIZHNEDNEPROVSKY TRUBNY ZAVOD a/k/a INTERPIPE NTRP a/k/a ("NTRP"), PADRE TUBULARS, INC., ALLIED STEEL, SA and INTERPIPE, LTD., appeared in person and by attorney of record and announced ready for trial. And a jury having been previously demanded, a jury consisting of twelve (12) qualified jurors was duly impaneled and the case proceeded to trial.

Before the close of evidence, United gave notice of non-suit of certain causes of action, save and except, breach of contract, breach of implied warranties, fraud, conspiracy and strict product liability.

After the close of evidence, the Court submitted the remaining questions of fact in the case to the jury. The Charge of the Court and the Verdict of the jury are attached hereto and incorporated herein for all purposes. The jury returned their Verdict in this cause on the 2nd day of October, 2014

*Judgment*

)

which was accepted and filed by the Court without objection from any party. Based upon the verdict, the evidence, the record, arguments of counsel, legal authorities and pleadings, the Court concludes that United is entitled to and shall recover judgment against the Defendants, SEPCO TUBULARS, INC., SEPCO, SA, PADRE TUBULARS, INC. and NTRP. And therefore, based upon the record, the verdict and the applicable legal and equitable principles, the Court renders Judgment as follows:

## JUDGMENT FOR BREACH OF CONTRACT

Based on the jury's answers to Question Nos. 1, 2, 3, 4, 5, and 21, which are hereby incorporated for all purposes, the record and the applicable legal and equitable principles, IT IS THEREFORE ORDERED, ADJUDGED and DECREED that:

1. Plaintiff, UNITED RESOURCES, LP n/k/a AUBRIS RESOURCES, LP is entitled to judgment for breach of contract against Defendant, PADRE TUBULARS, INC. ("PADRE").

2. Plaintiff, UNITED shall have and recover from PADRE the sum of ONE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,300,000.00); pre-judgment interest on such sum in the amount of $571,659.27 from December 19, 2005 through October 2, 2014 and $178.09 per day thereafter until the date of judgment is signed; and post-judgment interest on this sum at the rate of 5% compounded annually from the date of this judgment until paid.

3. UNITED shall have and recover from PADRE the sum of THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) in attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code; and post-judgment

000842

interest on this sum at the rate of 5% compounded annually from the date of this judgment until paid.

## JUDGMENT FOR TORT CLAIMS

Based on the jury's findings to Question Nos. 6, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, and 23, which are hereby incorporated for all purposes, the record and the applicable legal and equitable principles, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

Plaintiff UNITED is entitled to recover against Defendants, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE), SEPCO SA (n/k/a INTERPIPE EUROPE SA) and NTRP as follows:

1. UNITED shall have and recover damages against Defendant, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE), the sum of TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($260,000.00); pre-judgment interest on such sum in the amount of $114,331.85 from December 19, 2005 through October 2, 2014 and $35.62 per day thereafter until this judgment is signed and post-judgment interest on this sum at the rate of 5% compounded annually from the date of this judgment until paid.

2. Plaintiff UNITED shall have and recover against Defendant, SEPCO SA (n/k/a INTERPIPE EUROPE S.A.), the sum of TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($260,000.00); pre-judgment interest on such sum in the amount of $114,331.85 from December 19, 2005 through October 2, 2014 and $35.62 per day thereafter until this judgment is signed and post-judgment interest on this sum at the rate of 5% compounded annually from the date of this judgment until paid.

000843

3. NTRP is jointly and severally liable to UNITED for all Tort Claim damages hereinabove awarded to UNITED, and therefore UNITED shall have and recover against Defendant NTRP the sum of ONE MILLION THREE HUNDRED THOUSAND and NO/100 DOLLARS ($1,300,000.00), together with pre-judgment interest on such sum in the amount of $571,659.37 from December 19, 2005 through October 2, 2014 and $178.09 per day thereafter until the date this judgment is signed and post-judgment interest on such sums at the rate of 5% compounded annually from the date of this judgment until paid. Provided, however, the sums UNITED shall have and recover from NTRP shall be reduced by those amounts, if any, UNITED recovers from either SEPCO SA or SEPCO TUBULARS, INC.

4. Plaintiff UNITED shall have and recover punitive damages against the following Defendants in the amounts stated:

   a. SEPCO SA (n/k/a INTERPIPE EUROPE SA) - $70,000.00

   b. SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE) - $70,000.00

   c. NTRP - $210,000.00

The foregoing punitive damages shall bear post-judgment interest of 5% compounded annually from the date this judgment is signed until paid.

000844

## ALTERNATIVE RECOVERY FOR TORT CLAIMS

Should the jury's findings of fraud and misrepresentation against NTRP, SEPCO SA, and SEPCO TUBULARS, INC., be overturned on appeal, Plaintiff UNITED may, in the alternative, recover the following on its breach of warranties claim:

Based upon the jury's answers to Question Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, which are incorporated for all purposes, the record and the applicable legal and equitable principles, IT IS THEREFORE ORDERED ADJUDGED AND DECREED that:

1. From Defendant, PADRE TUBULARS, INC., UNITED shall have and recover the sum of ONE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($130,000.00); pre-judgment interest on such sum in the amount of $57,165.93 through October 2, 2014 and $17.81 per day thereafter until the judgment is signed and post-judgment interest on such sums in the amount of 5% compounded annually from the date of this judgment until paid.

2. From Defendant, SEPCO SA (n/k/a INTERPIPE EUROPE SA), UNITED shall have and recover the sum of TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLALRS ($260,000.00); pre-judgment interest on such sum in the amount of $144,331.85 through October 2, 2014 and $35.62 per day thereafter until the date the judgment is signed and post-judgment interest on such sums at the rate of 5% compounded annually from the date of this judgment until paid.

3. From Defendant, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE, INC.), Plaintiff UNITED shall have and recover the sum of TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($260,000.00) and pre-judgment interest on such sum in the amount of $144,331.85 through October 2,

000845·

2014 and $35.62 per day thereafter until the date the judgment is signed and post-judgment interest on such sums at the rate of 5% compounded annually from the date of this judgment until paid.

4. From Defendant, NTRP, Plaintiff UNITED shall have and recover the sum of FIVE HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($520,000.00) and pre-judgment interest on such sum in the amount of $228,663.71 through October 2, 2014 and $71.23 per day thereafter until the date the judgment is signed and post-judgment interest on such sums at the rate of 5% compounded annually from the date of this judgment until paid.

## JUDGMENT FOR DEFENDANTS, ALLIED STEEL, SA AND INTERPIPE, LTD.

Plaintiff shall take nothing from ALLIED STEEL, SA and INTERPIPE, LTD.

## COSTS AND OTHER MATTERS

1. Pre-judgment interest in this Final Judgment has been calculated at the rate of 5% simple interest from the date of filing of suit against Defendant, SEPCO TUBULARS, INC. and Defendant, PADRE TUBULARS, INC. (December 19, 2005) through the day before the signing of this Final Judgment.

2. All damages, pre-judgment interest and costs awarded in this Final Judgment shall bear post-judgment interest at the rate of 5% compounded annually.

3. All taxable costs expended or incurred by Plaintiff UNITED in this cause are assessed against Defendants, NTRP, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE, INC.), SEPCO SA (n/k/a INTERPIPE EUROPE SA), and PADRE TUBULARS, INC. The Court finds that these costs shall be borne jointly and

*Judgment*

Page 6

000846

severally by these Defendants. NTRP, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE, INC.), SEPCO SA (n/k/a INTERPIPE EUROPE SA), and PADRE TUBULARS, INC., shall each bear their own costs.

4. All writs, post-judgment relief, discovery and processes for the enforcement and collection of this judgment as against NTRP, SEPCO TUBULARS, INC. (n/k/a NORTH AMERICAN INTERPIPE, INC.), SEPCO SA (n/k/a INTERPIPE EUROPE SA), and PADRE TUBULARS, INC. may issue as necessary ~~the cost of which will be taxed against these Defendants jointly and severally~~

5. All relief requested in this case and not expressly granted by this Judgment is denied.

6. This judgment finally disposes of all parties and claims and is appealable.

SIGNED this _11_ day of _Nov._, 2014.

_____
JUDGE

000847

CAUSE NO. 6,112

FILED FOR RECORD
AT 11:53 O'CLOCK A M
THE 2nd DAY OF Oct A.D. 2014

DORA MTZ. CASTAÑON
IN THE DISTRICT CLERK, ZAPATA CO. TX
BY _____ DEPUTY

| UNITED RESOURCES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | ZAPATA COUNTY, TEXAS |
| SEPCO TUBULARS, INC. n/k/a NORTH | § | |
| AMERICAN INTERPIPE, LTD., INC. a/k/a | § | |
| NORTH AMERICA INTERPIPE, LTD., | § | |
| INC., et al. | § | |
| | § | 49th JUDICIAL DISTRICT |
| Defendants. | § | |

## JURY CHARGE

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence [unless you are told otherwise]. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence [unless you are told otherwise].

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

000742

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed The answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from the other facts proved.

Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. get the signatures for the verdict certificate; and

000743

f.  Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror?  If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1.  Unless otherwise instructed, you may answer the questions on a vote of ten jurors.  The same ten jurors must agree on every answer in the charge.  This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.  If ten jurors agree on every answer, those ten jurors sign the verdict.

    If eleven jurors agree on every answer, those eleven jurors sign the verdict.

    If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.  All jurors should deliberate on every question.  You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers.  But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

4.  There are some special instructions before Questions _____ explaining how to answer those questions.  Please follow the instructions.  If all twelve of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions?  If you do not, please tell me now.

_____
JUDGE PRESIDING

QUESTION NUMBER 1

Did Sepco Tubulars, Inc. and Padre Tubulars, Inc. agree to provide to United Resources, LP 4-½ inch 13.5 pound API 5CT P-110 casing for use in the Garcia No. 1 Well?

Answer "Yes" or "No"

Sepco Tubulars, Inc.:        ANSWER:        NO

Padre Tubulars, Inc.:        ANSWER:        YES

000745

QUESTION NUMBER 2

Answer the following question only if you answered "yes" with respect to Sepco Tubulars, Inc. If you answered Question Number 1 "no" with respect to Sepco Tubulars, Inc. do not answer this question.

Did Sepco Tubulars, Inc. fail to comply with the agreement?

Answer "Yes" or "No"

ANSWER: _____


QUESTION NUMBER 3

Answer the following question only if you answered "yes" with respect to Padre Tubulars, Inc. If you answered Question Number 1 "no" with respect to Padre Tubulars, Inc. do not answer this question.

Did Padre Tubulars, Inc. fail to comply with the agreement?

Answer "Yes" or "No"

ANSWER: __YES__


QUESTION NUMBER 4

If you answered either Question 2 or Question 3 "yes", answer the following question. If you did not answer either Question 2 or 3 "yes" then do not answer the following question.

Did the failure to comply with the agreement with United Resources result in, if any, damage to the Garcia No.1 well?

Answer "Yes" or "No"

ANSWER: __YES__

*Page 6*

000746

QUESTION NUMBER 5

If you answered Question 4 "yes" answer the following question. If you did not answer Question 4 "yes" then do not answer the following question.

Damages are those which naturally and necessarily flow from the failure to comply with its agreement. Damages include the natural, probable and foreseeable consequences of a Defendant's failure to comply with its agreement.

What sum of money, if paid now in cash, would fairly and reasonably compensate United Resources, LP for its loss, if any, as a result of the breach of the agreement?

Answer in dollars and cents for damages, if any.

ANSWER: $ 1,300,000

QUESTION NUMBER 6

Did the fraud, if any, of those named below proximately cause the damage to the Garcia No. 1 Well?

Fraud occurs when:

1. A party fails to disclose a material fact within the knowledge of that party, and

2. The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3. The party intends to induce the other party to take some action by failing to disclose the fact, and

4. The other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No"

ANSWER:

Padre Tubulars, Inc.:            N

Sepco Tubulars, Inc.:           Y

NTRP:                           Y

Sepco SA:                       Y

Allied Steel, S.A.:             N

Interpipe, Ltd.:                N

000748

Answer the following question only if you answered "yes" to Question 6 as to any of the Defendants. If you did not answer "yes" to Question 6 as to any of the Defendants do not answer the following question.

QUESTION NUMBER 7

Do you find that there was a conspiracy to sell casing to United Resources, LP which did not comply with the requirements of API 5CT P-110?

A conspiracy consists of one or more of the Defendants must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in damages to United Resources, LP. One or more of the persons involved in the conspiracy must have performed an act or acts to further the conspiracy.

Answer "Yes" or "No"

ANSWER:      _NO_

QUESTION NUMBER 8

If you answered Question 7 "yes" then answer the following question. If you did not answer Question 7 "yes" then do not answer the following question.

Which of the Defendants, if any, was part of a conspiracy?

To be part of a conspiracy one or more of the Defendants must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in damages to United Resources, LP. One or more of the persons involved in the conspiracy must have performed an act or acts to further the conspiracy.

ANSWER:

Padre Tubulars, Inc.:           _____

Sepco Tubulars, Inc.:           _____

NTRP:                           _____

Sepco SA:                       _____

Allied Steel, S.A.:             _____

Interpipe, Ltd.:                _____

QUESTION NUMBER 9

Was there a breach of an implied warranty of fitness for a particular purpose, and, if so, did such breach proximately cause of the damage, if any, to the Garcia No. 1 Well?

A warranty that the goods are fit for particular purposes is implied if at the time of contracting –

1.     the seller had reason to know the particular purpose for which the goods are required; and

2.     the seller had reason to know that the buyer was relying on the seller's skill and judgment to furnish suitable goods.

There is a breach of an implied warranty of fitness for a particular purpose if at the time of the sale the goods supplied by the seller are unfit for the particular purpose of which goods were purchased.

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No"

ANSWER:

Padre Tubulars, Inc.:     Y

Sepco Tubulars, Inc.:     Y

NTRP:     Y

Sepco SA:     Y

Allied, Steel S.A.:     N

Interpipe, Ltd.:     N

United Resources, LP.:     N

000750

QUESTION NUMBER 10

Did the negligence, if any, of United Resources, LP proximately cause the damage to the Garcia No. 1 Well.

"Negligence" means failure to use ordinary care, that, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary Care," means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No"

ANSWER:   No

000751

QUESTION NUMBER 11

If you answered "No" to Question 10 and "Yes" to Question 9 for more than one of these named in Question 9 then answer the following question. If you answered "Yes" to Question 10 and "Yes" to Question 9 for any of those named in Question 9 then answer the following question.

Assign percentages of responsibility only to those you found caused or contributed to cause the damage. The percentages you find must total 100%. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person or product is not necessarily measured by the number of acts, omissions, or product defects found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

For each you found caused or contributed to cause the damage to the Garcia No. 1 Well find the percentage of responsibility attributable to each.

Padre Tubulars, Inc.: _____10_____ %

Sepco Tubulars, Inc.: _____20 ~~50 m~~_____ %

NTRP: _____50_____ %

Sepco SA: _____20_____ %

Allied Steel, S.A.: _____0_____ %

Interpipe, Ltd.: _____0_____ %

United Resources, LP: _____0_____ %

TOTAL: 100%

With respect to United Resources, LP do not consider any act or omission of United that constitutes a mere failure to discover or guard against a product defect.

If you answered "yes" to any portion of Questions 6, 7, or 9 as to any of the Defendants then answer the following question. Otherwise, do not answer the following question.

QUESTION NUMBER 12

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate United Resources, LP for its damages, if any, to the Garcia No. 1 Well?

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer in dollars and cents for damages, if any.

ANSWER: $ 1, 300, 000

000753

QUESTION NUMBER 13

Was there a manufacturing defect in the pipe sold to United at the time it left the possession of the Defendants that was a proximate cause of the damage in question?

A "manufacturing defect" means that the product deviated in its construction or quality from its specifications or planned output in a manner that renders it unreasonably dangerous. An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics

"Proximate cause" means the cause which, in a natural and continuous sequence, produces an event, and without such cause, such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No".

ANSWER: __YES__

000754

If you answered "No" to Question 13 , then skip this question.

QUESTION NUMBER 14

Were any of the Defendants a manufacturer of the defective pipe?

A "manufacturer" means a person who is a designer, formulator, constructor, rebuilder, producer, compounder, processor, or assembler of any product or any component thereof in the stream of commerce.

Answer "Yes" or "No"

ANSWER:

Sepco SA: _____N_____

Sepco Tubulars, Inc.: _____N_____

Padre Tubulars, Inc.: _____N_____

NTRP: _____Y_____

000755



If you answered "No" to Question 13 , then skip these questions.

QUESTION NUMBER 15

Were any of the Defendants engaged in the business of selling pipe?

The "business of selling" means involvement, as part of the Defendants' business, in selling, leasing, or otherwise placing in the course of commerce products similar to the product in question by transactions that are essentially commercial in character.

Answer "Yes" or No".

ANSWER: ___Y___

QUESTION NUMBER 16

If you answered "yes" to Questions 15 answer the following question. If you did not answer "yes" to Question 15 do not answer the following question.

Which of the Defendants, if any, were sellers of the defective pipe?

Answer "Yes" or No".

ANSWER:

Sepco SA: ___Y___

Sepco Tubulars, Inc.: ___Y___

Padre Tubulars, Inc.: ___Y___

NTRP: ___Y___

000756

If you answered "No" to Question 13, then skip this question.

QUESTION NUMBER 17

Did the Defendant-Seller make an express factual representation about the quality of the pipe that was incorrect that United relied upon in obtaining or using the pipe and United suffered damages to the Garcia No. 1 Well which United would not have suffered if the product had been as represented?

Answer "Yes" of "No"

ANSWER:

Sepco SA: _____Y_____

Sepco Tubulars, Inc.: _____Y_____

Padre Tubulars, Inc.: _____Y_____

NTRP: _____Y_____

000757

If you answered "No" to Question 13 , then skip this question.

QUESTION NUMBER 18

Did the Defendant-Seller actually know of a defect in the pipe at the time the Defendant-Seller supplied the pipe and United's harm resulted from the defect?

Answer "Yes" of "No"

ANSWER:

Sepco SA:  Y

Sepco Tubulars, Inc.:  Y

Padre Tubulars, Inc.:  N

NTRP:  Y

000758

If you answered "No" to Question 13 , then skip this question.

QUESTION NUMBER 19

If you answered "No" to Question 10 and "Yes" to Question 14, 17, or 18 for more than one of those named above then answer the following question. If you answered "Yes" to Question 10 and "Yes" to Questions 14, 17, or 18 for any of those named above then answer the following question.

Assign percentages of responsibility only to those you found caused or contributed to cause the damage. The percentages you find must total 100%. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person or product is not necessarily measured by the number of acts, omissions, or product defects found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

For each you found caused or contributed to cause the damage, find the percentage of responsibility attributable to each.

Padre Tubulars, Inc.: ____0____ %

Sepco Tubulars, Inc.: ____20____ %

NTRP: ____60____ %

Sepco SA: ____20____ %

United Resources, LP: ____0____ %

TOTAL: 100%

With respect to United Resources, LP do not consider any act or omission of United that constitutes a mere failure to discover or guard against a product defect.

000759

If you answered "No" to Question 13 , then skip this question.

QUESTION NUMBER 20

What sum of money, if paid now in cash, would fairly and reasonably compensate United Resources, LP for its damage, if any, to the Garcia No.1 Well.

Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of United Resources, LP.

ANSWER: _1, 300, 000_

000760

If you answered "Yes" to Question 4 , then answer the following question.

QUESTION NUMBER 21

What is a reasonable fee for the necessary services of United Resources, LP's attorneys in this lawsuit?

Factors to consider in determining a reasonable fee include:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.

2. The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the lawyers performing the services.

Answer in dollars and cents, if any.

ANSWER: $ __350,000.__

# VERDICT CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

_____    _____

_____    _____

_____    _____

_____    _____

_____

000762

Answer the following question only if you unanimously answered "Yes" to Question 6. Otherwise, do not answer the following question.

To answer "Yes" to (any part of) the following question, your answer must be unanimous. You may answer "No" to (any part of) the following question only upon a vote of ten or more jurors. Otherwise, you must not answer (that part of) the following question.

QUESTION NUMBER 22

Do you find by clear and convincing evidence that the damage to United Resources, LP resulted from malice or fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Fraud" is defined as fraud other than constructive fraud.

"Malice" means a specific intent by Defendants to cause substantial injury or harm to United Resources, LP,

Answer "Yes" or "No."

ANSWER __Yes__

000763

## VERDICT CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

_____          _____

_____          _____

_____          _____

_____          _____

_____

000764

# PHASE II

Answer the following question only if you unanimously answered "Yes" to Question 22. Otherwise, do not answer the following question.

You must unanimously agree on the amount of any award of exemplary damages.

QUESTION NUMBER 23

What sum of money, if any, if paid now in cash, should be assessed against the following Defendants and awarded to United Resources, LP as exemplary damages, if any, for the conduct found in response to Question 22?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are-

a) The nature of the wrong.

b) The character of the conduct involved.

c) The degree of culpability of the following Defendants.

d) The situation and sensibilities of the parties concerned.

e) The extent to which such conduct offends a public sense of justice and propriety.

f) The net worth of the following Defendants.

Answer in dollars and cents, if any.

ANSWER:

Sepco SA: $70,000.00

Sepco Tubulars, Inc.: $70,000.00

NTRP: $210,000.00

FILED FOR RECORD
AT 6:19 O'CLOCK P M
THE 2nd DAY OF Oct A.D. 2014

DORA MTZ. CASTAÑON
49th DISTRICT CLERK, ZAPATA CO., TX
BY Elva u Garcia DEPUTY

Page 25

000765

## VERDICT CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

FILED FOR RECORD
AT 7:00 O'CLOCK P M
THE 2nd DAY OF OCT A.D. 2014

DORA MTZ. CASTAÑON
49th DISTRICT CLERK, ZAPATA CO., TX
BY _____ DEPUTY

(To be signed by those rendering the verdict if not unanimous.)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

000766

# VERDICT CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)